MASE v. NORTHERN PAC. R. CO.

(Circuit Court, D. Minnesota, Third Division. August 21, 1893.)

MASTER AND SERVANT—WHO IS A VICE PRINCIPAL—RAILROAD CONDUCTOR.

Rules of a railroad company imposing upon its conductors the care and management of switches used by them, and charging them with the responsibility of their proper handling and position while in such use, are such a delegation by the company of the duty which it owes to its employes as will render a conductor, in that connection, a vice principal; so as to charge the company with liability for the death of an engineer killed by reason of his engine running into an occupied side track, through a switch negligently left open and unguarded by the conductor of another train.

At Law. Action by Clara Mase, as administratrix of Frank B. Mase, deceased, against the Northern Pacific Railroad Company, to recover for the death of her intestate. Judgment for plaintiff on a case submitted upon an agreed statement of facts.

Erwin & Wellington, for plaintiff.
John C. Bullitt, Jr., and T. R. Selmes, for defendant.

WILLIAMS, District Judge. This case is submitted upon the following agreed statement of facts:

"That the plaintiff is the duly-appointed and legally-qualified administratrix of the estate of Frank B. Mase, deceased, and is the widow of said deceased; that, at all times hereinafter mentioned, plaintiff's intestate, Frank B. Mase, was in the employ of the defendant as an engineer on one of its passenger trains, and was, on the 3d day of October, 1890, engaged as such engineer upon the engine of a certain train, mentioned and referred to in the testimony hereto annexed as passenger train No. 2; that on said 3d day of October, 1890, while so engaged in the performance of his duties as such engineer upon said train, said Frank B. Mase was killed in an accident occurring at or near Butler, in the state of Montana, caused by said train on which plaintiff's intestate was so employed running upon a certain side track or safety track, by reason of a misplaced switch, and thus colliding with certain cars and a certain engine, mentioned as engine No. 483, which stood upon said side track or safety track; that said switch was so misplaced or left open by one E. L. Short, the conductor of the train mentioned as No. 58, of which said engine No. 483 was a part; that the circumstances of said accident are as stated in the testimony of Marshall Nixon, given at the coroner's inquest on the body of said Frank B. Mase, a copy of which is hereto attached, and made a part of this stipulation; that the trains referred to herein or in said testimony were trains owned or controlled by defendant

in operating its lines of railway in said state of Montana and elsewhere, and that the persons engaged in and about said trains were in the employ of the defendant; that said accident was caused solely by the carelessness and negligence of said B. L. Short in permitting said switch to remain open and out of place, and said carelessness and negligence of said B. L. Short was the proximate cause of said accident and of the death of said Frank B. Mase; that said Frank B. Mase was free from all carelessness and negligence whatever in the premises.

"It is further agreed and stipulated that all the rules set forth in the complaint, and any and all of the rules contained in defendant's rule book, hereto attached, may be read and referred to by either party, in all proceedings that may be had in this case, with the same force and effect as though the same were fully set out herein, and the adoption and promulgation of said rules for the guidance of its employes is hereby admitted on behalf of the defendant; that the statutes of the state of Montana may be read and referred to by either party, in all proceedings that may be had in this case, from the printed copies thereof generally in use, without further proof of passage, and with full force and effect. It is further stipulated and agreed that, by reason of the matters herein set forth, the plaintiff, as the personal representative of said Frank B. Mase, deceased, has sustained damage in the sum of $4,000. Said B. L. Short had no control or direction whatever over said plaintiff's intestate, other than as given by the rules of the company. It is further stipulated and agreed that a jury is hereby waived in all proceedings that may be had herein in which either party would otherwise be entitled to a jury, and that the court may order judgment herein in accordance with the facts admitted by the pleadings, and herein stipulated, and the law of the land."

## Marshall Nixon, being duly sworn, says:

"I live at Missoula. I am a railroad brakeman. At the time of the accident, on October 3d, I was at Butler. I was braking for Conductor Short, on train No. 58, bound for Helena from Missoula. Our train broke in two in the tunnel. We tried to back her up, and couple her together again, but the train was too heavy for the engine, and we could not get it together. Then we came down to Butler with the front part of the train, and put her in on the side track, on the left of the main line coming down. I cut the engine off, and took it out on the main line, and Mr. Short said to back it up, and put it on the safety switch, and I did so, and closed the switch after me, and put the lock in the keeper of the switch. Then I went to the telegraph office after Mr. Short. I was there about twenty minutes, then Mr. Short came out, and I followed after him, and he says to me, 'Go down, and tell that engineer [meaning our engineer] to back out, and come down on the head end of the train.' And he said, 'I will let him out.' Then he (Mr. Short) went right across the track, and opened the switch, and he says to me, 'Fly down, and turn all the retainers down back of the furniture cars;' and I did so, and as I went down I told the engineer that Short wanted him to back up, and he said there was not room to clear down there. Then I holloaed, and told Short they could not clear down there. Short gave me a rough answer, and said for me to go and see. I went and seen, and did not think there was room there myself. Then I went back, and went into the office, and asked him what he was going to do. He said he was going to unload some stuff if we ever got out of there, and was kind of mad, and did not talk much after that. About that time he stepped out of the telegraph office, and the passenger train was coming down the hill, and Short said just as soon as I come on the platform, 'My God, that switch!' Just then No. 2 came past the platform, and ran into safety switch. There was Harry Cromwell's engine (engine No. 483) first and another engine and some cars on that track. I just threw down my brake club, and ran down to the wreck. I heard a man holloa, and I ran on to the fireman of No. 2. I pulled him out of the hot water, and he said, 'Where is Frank?' Then I heard another man holloa right below me. I went down to him, about 20 or 30 feet from his engine, where I found Engineer Frank Mase lying in a pool of water that had run out of the engine. From there I pulled him back, and ran to get some help.

His fireman, as I passed him, said, 'Get a board for me, quick.' I went right up, and told a lot of boys belonging to other trains that were in and passengers to come down and give me some help; that two men were dying. That crowd rushed down, and begun to take care of them. I went to look if somebody else was hurt. I went to see Mase three or four times. He died within half an hour. There was no light on the safety switch."

The rules of the corporation that relate to this case, and as admitted by the stipulation, are as follows:

"A switch must never be left open for another train or engine, upon the supposition that its conductor will close it, unless such conductor assumes its charge. Conductors, brakemen, or others handling switches must stand by them until relieved, or until switches are closed." "The conductor who uses a switch is responsible for its position, unless the switchman or another conductor or engineer personally assumes its charge." "Conductors have full authority over the employes of trains they are placed in charge of; and such conductors are held responsible by the company for the safe management of their trains, and for the strict performance of their duties on the part of the men engaged with them."

Section 697, div. 5, of the Compiled Statutes of Montana provides as follows:

"That in every case the liability of the corporation to a servant or employe acting under the orders of his superior shall be the same as in case of injury sustained by the default or wrongful act of his superior, or to an employe not appointed or controlled by him, as if such servant or employe were a passenger."

Upon this state of facts, the only questions which arise are: First, whether the defendant corporation is relieved from liability to the plaintiff by reason of the claim by the defendant that Conductor Short was a fellow servant with the plaintiff's intestate at the time the injury occurred; and, second, whether the statutes of Montana relied upon by the plaintiff create any greater or different liability on the part of the defendant than the liability created or recognized by the general law.

Whether Conductor Short was at the time of the injury a fellow servant of Mase, the deceased, is the real question to be determined in this case; and in its determination I do not deem it necessary to endeavor to reconcile the conflicting opinions of the various courts upon this question. I am very much impressed with the language of Justice Miller in the case of Garrahy v. Railroad Co., 25 Fed. Rep. 258, in which that eminent jurist says:

"The question thus presented is one which has been much considered of late in the courts of last resort of all the states, and much discussed at the bar in those and in the inferior courts. There is no unanimity in the decisions of the courts, nor in the opinions of the profession."

It would seem that the decision in the Ross Case, 112 U. S. 377, 5 Sup. Ct. Rep. 184, settled that the conductor of a railway train was, by reason of the superiority of his position, a vice principal, and not a fellow servant, of the employes under him. But defendant claims that by the decision by the same court in the case of Railroad Co. v. Baugh, (June 5, 1893,) 13 Sup. Ct. Rep. 914, the doctrine of the superiority of one employe over another, constituting him a vice principal, and not a coservant, as laid down in the Ross Case, is eliminated, and that the latter case, as far as it

conflicts with the decision in the Baugh Case, is overruled. In the case of Railroad Co. v. Andrews, (6th Circuit,) 6 U. S. App. 636, 1 C. C. A. 636, 50 Fed. Rep. 728, Justice Sage, delivering the opinion of the court, holds that a brakeman on one train is a coservant with the conductor and engineer on another train, and, if killed in a collision caused entirely by the negligence of the latter, the company is not liable. In the case of Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. Rep. 322, the court holds that the fact that employes were working on different trains is entirely immaterial in the consideration of the question as to whether they were or were not fellow servants.

After due consideration of the various decisions which may be characterized, at least, as conflicting, I am of the opinion that this case must be decided upon the question as to what duties devolved upon Conductor Short at the time of the injury, under the facts and circumstances of this case. If such duties were assigned to him as made him the representative of the defendant, for the time being, then he was the vice principal, and not a fellow servant. The rules of the company make it imperative upon him that, when he opens a switch, he must stand by it until relieved, or until such switch is closed, and it holds him responsible for its position until another conductor assumes its charge; and, while this may not be considered as a part of the duty of the defendant to provide a safe roadbed, instrumentalities, and appliances, yet it was a delegation by the defendant to the conductor of a duty of the same kind and character that it owed to the employe. This duty might have been delegated by the defendant to a brakeman or a switchman; but I am of the opinion that, when the defendant selected any one person to discharge this duty, he must be considered in law as a vice principal, and not a coservant. It does not depend upon the question of superiority, but upon the question of the delegation of a duty that originally devolved upon the principal to that person; for the rules of the company are very strict in holding the conductor responsible for the position of the switch, and delegate that important duty to him.

It is true it may be said that the performance of the duty of properly setting the switch depends upon the care of an employe, and that, therefore, it is his negligence alone which prevents its proper performance. But this is equally true of any of the positive duties of the employer. Competent servants cannot always be obtained, and reckless and incompetent ones cannot be discovered and discharged, without the exercise of care on the part of those whose duty it is to hire and discharge the men. Proper and safe cars cannot be built without due care on the part of the master mechanic and men in charge of the car shops. Cars cannot be kept in proper repair except by the exercise of diligence on the part of the inspectors. The roadbed and all its appurtenances cannot be kept in repair and in safe condition except by the exercise of care on the part of the employes and servants upon whom that duty devolves. Yet, if an accident is caused by the

negligence of any one of those employes in the performance of their duties, the company is responsible, because it has not used due care to provide its servants with reasonably safe places in which to work, or with reasonably safe instruments with which to do the work. So, in like manner, the track cannot be kept in safe condition for those passing over it without due care on the part of persons to whom is delegated the duty of setting the switches, and for a failure to perform this duty I hold that the defendant is liable in this case. This duty was delegated to the conductor. He neglects that duty, and leaves the switch open, and the court cannot say that Frank Mase, the deceased, standing at his post of duty, rushing in the darkness to inevitable destruction, has been provided with a reasonably safe place in which to work, and that this negligence, under the circumstances, is the negligence of a coservant, and not of a vice principal.

Under the foregoing statement of facts, and in this view of the case, it is unnecessary to consider the effect of the statute of Montana upon this case. I might say, however, that the language is not very clear, but it seems to refer to a servant or employe acting under the order of his superior, and would seem to be an attempt to graft the principles laid down in the Ross Case upon the statutes of that state, and adds nothing to the general law as applicable to this case.

Let judgment be entered for the plaintiff in the stipulated sum of $4,000.