NORTHERN PAC. R. CO. *v.* SMITH.

(Circuit Court of Appeals, Ninth Circuit. January 15, 1894.)

No. 105.

**1. MASTER AND SERVANT—FELLOW SERVANTS ON RAILROAD.**
     A laborer on a work train is a fellow servant with the conductor and engineer of a freight train of the same company.

**2. SAME.**
     The engineer and conductor of a work train are fellow servants with a laborer thereon, where it is in charge of a road master, who directs its movements, and has control of all persons employed upon it.

In Error to the Circuit Court of the United States for the Eastern Division of the District of Washington.

At Law. Action by Charles Smith against the Northern Pacific Railroad Company to recover damages for personal injuries. Verdict and judgment for plaintiff. Defendant brings error. Reversed.

Ashton & Chapman and McBride & Allen, for plaintiff in error.
Henry J. Snively and Ralph Kaufman, for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This action was brought by the defendant in error (hereinafter called the plaintiff) against the plaintiff in error (hereinafter called the defendant) to recover damages for injuries received on the 23d day of October, 1890, in a collision

between a freight and a working train belonging to defendant. Plaintiff was a laborer employed, with other persons, in cleaning up wrecks and making general improvements and repairs on defend- 's railroad, under the control and management of a road master. a point near Weston, a station in the Cascade mountains, the workmen were told by the road master to get on the work train, to be transferred a short distance, to a point where they were to be put at work. The workmen got onto the train, which consisted of three flat cars and an engine. There was a conductor of this train, but the road master directed its movements. Before leaving with the train, the road master sent a flagman to the next station east of Weston with directions, as some of the witnesses testified, to hold all trains at that point until otherwise ordered. The instructions to this flagman were in writing, and this writing was not produced at the trial, and, its loss not being satisfactorily accounted for, the court refused to allow the road master, who gave the instructions, to testify as to what was contained therein. The flagman was not present at the trial. While the working train was moving slowly up the grade, without any expectation that the road would be occupied, it was met by a heavy freight train coming on a down grade around a sharp curve, and a collision occurred, which demolished the working train, and in this collision the plaintiff was injured. The trial of the case resulted in a verdict in favor of the plaintiff.

The contention of the plaintiff in support of the verdict is that, in the absence of any testimony to the contrary, it must be presumed that the flagman performed his duty; that the collision occurred because the persons in charge of the freight train disobeyed the flagman's orders; or that the road master failed to give the proper order to the flagman; or because the road master neglected his duty to put out another flagman when he moved the working train; or that the superintendent or train dispatcher, who had charge of the movements of the freight train, failed to give any directions with reference to the work train, which they should have known was occupying the track. The contention of the defendant is that the collision was brought about by the neglect either of the flagman, who was directed to stop the freight train, failing to perform his duty, or that the conductor and engineer of the freight train did not perform their duty by obeying the flagman's orders, and that none of the persons in charge of the working train were in any manner at fault. There was no testimony tending to show any negligence whatever upon the part of the plaintiff.

The court, of its own motion, among other things charged the jury as follows:

"The flagman referred to in the evidence, from the position which he held, and the position which the plaintiff was performing or filling, would be a fellow servant with him in the same common employment, within the meaning of the rule I have laid down. The conductors and engineers running these trains—the work train and the freight train—were not fellow servants of the plaintiff. The road master was not a fellow servant with the plaintiff. So, in determining these questions of negligence, it will be for you to find from the evidence, considering all the circumstances in which the trains

were placed, and in which the men were placed; the character of the road, being a mountain road on a mountain division, with numerous curves, (a wreck having occurred there, which was being cleared away;) the freight train being behind time; and all the circumstances which are shown and not disputed in the case; and consider from all these circumstances where the responsibility may be placed, in accordance with the evidence,—whether upon the train dispatcher, the conductor of either of the trains, the engineer of either of the locomotives employed there,—the road master, or this flagman, —or whether it was one of those casualties which cannot be ascribed to the fault of any one. If there was nobody to blame in this, the plaintiff has no case against the defendant. If the flagman was to blame, in the sense that his fault caused the collision to occur, then plaintiff has no claim against this defendant. If this injury, however, was caused by the fault and culpability of an officer or agent of the road, or one of the persons having control of the running of the trains at the time, as I have stated, then he does have a claim, unless you can find that this injury was in some degree caused by acts of negligence on his part, or at least that his negligence contributed to it in any way which would bar him from recovering, even if the defendant was in fault."

Did the court err in giving this instruction? The flagman was a fellow servant with the plaintiff, and, if his negligence caused the collision, then plaintiff was not entitled to recover. This portion of the charge is not objected to. The testimony in the case is that the road master had charge of the movements of the working train. It is not claimed that the court committed any error in charging the jury that the road master and train dispatcher were not fellow servants with the plaintiff. There is no testimony in the record tending, in the remotest degree, to show that either the conductor or the engineer of the working train was guilty of any negligence, and there was no necessity of referring to them in the charge in the manner mentioned. The testimony in relation to the acts of the conductor and engineers of the freight train was to the effect that the flagman flagged the train before it reached Cole station; that the train stopped, and the flagman stated that the work train was working in shed 26; that he did not give any other orders or make any other statement; that, when the freight train came to shed 26, the work train was not there; that it is the common custom, in such cases, for the freight train to move on, proceeding with care, until it should meet the working train; that, in pursuance of this custom, the conductor and engineers continued moving the freight train slowly at such a rate as, they claimed, would enable them to safely stop the train in case they were flagged again; that they were moving a heavy freight train, with two locomotive engines, at about eight miles an hour, going on a down grade; that the whistle was blown about 1,500 feet before striking the working train around the curve. The entire testimony was of such a character as to leave a doubt as to whose fault, if any, the negligence which caused the collision should be charged. The jury may have, however, inferred from the testimony that it was the fault of the conductor and engineers upon the freight train in not moving it with greater care and caution, and at a less speed, after being informed that the work train was on the road. It will be observed that the charge of the court makes the defendant liable if the jury should find as a fact that the cause of the collision was

the neglect of the conductor or engineers of the freight train. It is this portion of the charge that is specially claimed to be erroneous.

In Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. 322, it was held that a brakeman working a switch for his train on one of the tracks of the railroad was a fellow servant with the engineer of another train of the same railroad corporation upon an adjacent track, and that he could not maintain an action against the railroad corporation for an injury caused by the negligence of the engineman in driving his engine too fast, and not giving due notice of its approach. In the course of the opinion the court said:

"Persons standing in such a relation to one another as did this plaintiff and the engineman of the other train are fellow servants, according to the very great preponderance of judicial authority in this country, as well as the uniform course of decision in the house of lords and in the English and Irish courts, as is clearly shown by the cases cited in the margin. They are employed and paid by the same master. The duties of the two bring them to work at the same place at the same time, so that the negligence of the one in doing his work may injure the other in doing his work. Their separate services have an immediate common object,—the moving of the trains. Neither works under the orders or control of the other. Each, by entering into his contract of service, takes the risk of the negligence of the other in performing his service, and neither can maintain an action for an injury caused by such negligence against the corporation, their common master."

In Railroad Co. v. Andrews, 1 C. C. A. 636, 50 Fed. 728, the circuit court of appeals, sixth circuit, following the principles announced in the Randall Case, and distinguishing the case under consideration from that of Railroad Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, and referring to numerous decisions of the supreme court, held that a brakeman on one train is a coservant of the conductor and engineer of another train, and, if injured or killed in a collision caused entirely by the negligence of the latter, the company would not be liable. In the discussion of the case the court quotes with approval from Railway Co. v. Devinney, 17 Ohio St. 198, as follows:

"A railway company is not liable in damages to a brakeman on one of its trains for injuries sustained by him in a collision of his train with another train of the same company, where the collision occurred by means of the negligence of the conductor or engineer, or both, of such other train, unless it appear that the company was guilty of a want of ordinary care in the selection and employment of an incompetent conductor or engineer, through whose negligence the collision occurred."

See, also, Railroad Co. v. Clark, 6 C. C. A. 281, 57 Fed. 129; Mase v. Railroad Co., 57 Fed. 286.

Under the principles announced in these decisions, it is apparent that the portion of the charge of the court which is specially objected to is clearly erroneous, and that the error is of such a character as to compel a reversal of the case.

In Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, which contains the latest exposition of the supreme court of the United States touching the question as to who are, or are not, vice principals or fellow servants of a railroad corporation, there is an able and exhaustive discussion of the question that is well worthy of a careful perusal. This decision explains the Ross Case, to a certain

extent it limits the doctrines therein announced, and points out with great clearness the character of cases that should be distinguished from it. In the Ross Case it was decided that—

"A conductor of a railroad train, who has the right to command the movements of a train and control the persons employed upon it, represents the company while performing those duties, and does not bear the relation of fellow servant to the engineer and other employes of the train."

In the Baugh Case the court declared that the argument in support of this rule "gives a potency to the rule of the company it does not possess," and in this connection said:

"The inquiry must always be directed to the real powers and duties of the official, and not simply to the name given to the office. The regulations of a company cannot make the conductor a fellow servant with his subordinates, and thus overrule the law announced in the Ross Case. Neither can it, by calling some one else a conductor, bring a case within the scope of the rule there laid down. In other words, the law is not shifted backwards and forwards by the mere regulations of the company, but applies generally, irrespectively of all such regulations. There is a principle underlying the decision in that case, and the question always is as to the applicability of that principle to the given state of facts."

After further discussion as to what was really decided in the Ross Case, it is said:

"The court, therefore, did not hold that it was universally true that, when one servant has control over another, they cease to be fellow servants, within the rule of the master's exemption from liability, but did hold that an instruction couched in such general language was not erroneous when applied to the case of a conductor having exclusive control of a train, in relation to other employes of the company acting under him on the same train. The conductor was, in the language of the opinion, 'clothed with the control and management of a distinct department;' he was 'a superintending officer,' as described by Mr. Wheaton, (Neg. § 232a;) he had 'the superintendence of a department,' as suggested by the New York court of appeals. Malone v. Hathaway, (64 N. Y. 12.) And this rule is one frequently recognized. Indeed, where the master is a corporation, there can be no negligence on the part of the master except it also be that of some agent or servant, for a corporation only acts through agents. The directors are the managing agents. Their negligence must be adjudged the negligence of the corporation, although they are simply agents. So, when they place the entire management of the corporation in the hands of a general superintendent, such general superintendent, though himself only an agent, is almost universally recognized as the representative of the corporation,—the master,—and his negligence as that of the master. And it is only carrying the same principle a little further, and with reasonable application, when it is held that, if the business of the master and employer becomes so vast and diversified that it naturally separates itself into departments of service, the individuals placed by him in charge of those separate branches and departments of service, and given entire and absolute control therein, are properly to be considered, with respect to employes under them, vice principals,—representatives of the master,—as fully and as completely as if the entire business of the master was by him placed under charge of one superintendent. It was this proposition which the court applied in the Ross Case, holding that the conductor of a train has the control and management of a distinct department. But this rule can only be applied when the branches or departments of service are, in and of themselves, separate and distinct."

After making several illustrations as to the branches or departments of the railroad service that are clearly separate and distinct, the court says that "from this natural separation flows the rule that

he who is placed in charge of such separate branch of the service, who alone superintends and has control of it, is, as to it, in the place of the master."

In applying the principles of that decision to the facts of this case, it necessarily results in the conclusion that the court erred in charging the jury that the conductor and engineer of the work train "were not fellow servants of the plaintiff," because neither of them had the right to command the movements of the train, or had any control of the persons employed upon it. They were, under the decision in the Baugh Case, fellow servants with the plaintiff, and for their negligence, if any, he could not recover. The road master was in charge of the working train, directed its movements, and had control of all the persons employed upon it, including the conductor and engineer. He was a vice principal, and for any negligence on his part, if any, that caused the collision, the corporation would be liable.

We deem it unnecessary to discuss the question as to whether the court erred in charging the jury that the burden of proof would rest upon the defendant, by a fair preponderance of evidence, to establish the fact of contributory negligence upon the part of plaintiff or his fellow servants, "by affirmative proof brought here in favor of the defense." The objections raised to this charge will be readily obviated upon another trial by following the principles announced, in Railroad Co. v. Novak.[1]

The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

---

[1] Opinion not yet handed down.