## NORTHERN PAC. R. CO. v. POIRIER.

(Circuit Court of Appeals, Ninth Circuit. March 6, 1895.)

No. 185.

**1. NEGLIGENCE—QUESTION FOR JURY.**

Plaintiff, a brakeman in the employ of defendant railway company, while performing his duty on a regular freight train, was injured in a collision caused by a special or wild train running into the regular train while it was stopped at a junction with a spur track, to leave certain cars. The special train, which was running on telegraphic orders, was only a few minutes behind the regular train, and the conductor of the special had not been informed that the regular would stop at the spur track. The rules of the company provided that a following train should keep 10 minutes behind the train in front of it, but also made it the duty of the train dispatcher to keep trains known to be running too close at the proper distance apart. *Held*, that it was a question for the jury to decide upon these facts whether the railway company was guilty of negligence in the management of the second train, which contributed to the accident, and that it was not error to refuse to direct a verdict for the railway company.

**2. SAME—INSTRUCTION TO JURY—SUBSTANCE OF CHARGE.**

*Held*, further, that an instruction which substantially submitted it to the jury to decide whether the company was negligent in sending out the special train without notifying the conductor that the first train would stop where it did, and in failing so to control the running of the special train as to avoid the accident which happened, was not rendered erroneous by some expressions which, apart from their context, might be taken to mean that the company would be responsible for the negligence of the conductor of the special train in disobeying orders, and to disregard the fact that he was a fellow servant of plaintiff.

**3. MASTER AND SERVANT—DUTY TO PROVIDE SAFE APPLIANCES, ETC.**

The duty which an employer owes to his employé to provide proper means, facilities, and appliances for carrying on the work in reasonable safety cannot be delegated to any subordinate, so as to exempt the employer from liability to an employé if injury happens to him through neglect of that duty.

In Error to the Circuit Court of the United States for the District of Washington.

This was an action by Narcisse Poirier against the Northern Pacific Railroad Company to recover damages for personal injuries. Judgment was rendered in the circuit court for the plaintiff. Defendant brings error.

Ashton & Chapman and John R. McBride, for plaintiff in error.

Aylett R. Cotton, S. C. Hyde, John J. Reagan, W. S. Glass, and J. L. Cretty, for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. On October 7, 1892, Narcisse Poirier, plaintiff (defendant in error), while in the employ of the Northern Pacific Railroad Company, defendant (plaintiff in error), and acting in the capacity of middle brakeman upon a regular freight train, designated as the "first train," when it stopped at Clyde Spur, and while he was standing upon the rear end of one of the flat cars,

about midway of the train, and engaged in the performance of his duty in attempting to uncouple the cars, received certain injuries in a collision which then occurred by a second train running into and against the first train at the rear end thereof. For the injuries thus received, the plaintiff obtained a verdict for $21,600, which was afterwards reduced, upon a motion for a new trial, to $7,500. There is no conflict in the evidence as to the manner in which the collision occurred; but there is a direct conflict or difference of opinion between the respective counsel as to the deductions to be drawn from the evidence as to who was guilty of the negligence which caused the collision,—whether it was the conductor of the first train, or the conductor of the second train, or some undiscovered vice principal of the corporation. It is conceded that the plaintiff was entirely free from any fault or negligence upon his part.

The assignments of error call in question the correctness of the rulings of the trial court in refusing to give certain instructions asked by the defendant, and in giving other instructions, in its charge to the jury, touching the liability of the defendant, and of its negligence in the premises. To obtain a thorough understanding of the true meaning and effect of these instructions, it will be necessary to state the facts relative to the position, condition, and manner in which the respective trains were being operated on the night in question. The collision occurred about midnight. The first train was a regular local freight train, running on schedule time, under the management, control, and direction of the conductor. The second train was running under telegraphic orders, without any schedule or time card, known in railroad parlance as a "wild train." At Moscow, a station on the railroad, the second train was standing upon the track when the first train left that station. At Vollmer, another station, the first train stopped to drop some cars. It was detained about 10 minutes, when it resumed its course over the mountain grade. The second train was then in sight, standing on the track a short distance in the rear, with its lights plainly visible. Clyde Spur, where the collision occurred, is about six miles from Vollmer. It is a place on the road where there is a spur track running out to a logging camp, where saw logs and cordwood are loaded on the cars. There is a side track or switch upon which cars are left to be run out on the spur track. It is not a regular station, and the regular freight train only stops there when there are empty cars to be left, or loaded ones to be taken away. The first train, on the night in question, had certain cars to be left at this place, and stopped there for that purpose. There were three brakemen on the train. The head brakeman, when the train was slowing up, left his place, and started forward to open the switch. The rear brakeman at this time saw the second train rounding a curve in the road, and immediately signaled it to stop, and at the same time shouted as loud as he could. The second train was then about one-quarter of a mile behind the first train. The first train had barely come to a full stop when the second train, moving at a speed of about four miles an hour, struck it,

by running the cowcatcher of its engine under the rear end of the caboose on the first train. The conductor of the first train had been lying down, but was in his seat, in the lookout of the caboose, and passed out of the rear end just before the collision occurred. The conductor of the second train had not been informed that the first train would stop at Clyde Spur.

, The defendant offered no evidence in relation to its care or negligence in running the respective trains, except certain of its rules, which provide how its trains shall be run. Rule 120 provides that:

"A train must not leave a station to follow a passenger train until five (5) minutes after the departure of such passenger train, unless some form of block signal is used. In mountain districts they will not follow first-class trains descending, under any circumstances, until such trains are duly reported at next telegraph station. Freight trains must not follow each other descending mountain grades. * * *"

This rule, it will be noticed, relates principally to passenger trains. Clyde Spur is not a telegraph station.

Rule 122: "Freight trains following each other must keep not less than ten minutes apart (except in closing up at stations or at meeting and passing points) unless some form of block signal is used."

Rule 129: "All trains must approach the end of double track and junctions prepared to stop, and must not proceed until the switches or signals are known to be right, and the track is plainly seen to be clear."

Counsel for defendant contends that there is no testimony in the record to justify the statement that the second train was a wild train, running on telegraphic orders, without any schedule or time card. As some of the objections urged to the instructions are dependent upon this fact, it is deemed proper at this point to state the facts as shown by the record, and our conclusion in regard thereto. The witness Allen, who was the rear brakeman on the first train, in answer to plaintiff's question, "Go on and tell all about the accident," said: "We done our work there [referring to the station where the first train stopped after leaving Moscow], and went on down the hill, and they [the second train] followed with an extra, or wild train, and it was running by telegraphic orders, and had no schedule orders or time card." Here the witness was interrupted by counsel for defendant asking: "How do you know? You need not state if you do not know." No answer was given by the witness. The counsel for plaintiff then said to the witness: "State what else you know about it." The witness proceeded to tell what occurred after leaving Vollmer. Neither at that time nor at any other time was it shown that this witness had no personal knowledge of the manner in which the second train was running. There was no motion made to strike out his testimony upon the ground that it was hearsay, or upon any other ground. He stated the fact as if it was within his knowledge, and there is no testimony that contradicts, or tends to contradict, the fact as stated by him. If his statement was not true, the defendant could easily have offered testimony showing what the facts were as to how the second train was being run, or ordered to be run. It did not do so. Our conclusion upon this point is that the trial court did not err in stat-

ing to the jury that the second train was running by telegraphic orders, without any schedule or time card.

The general principles of law, applicable to the facts of this case, concerning the liability of the defendant, are few and simple, and may be classed under three heads: (1) The conductor of the first train, within the rule announced in the Ross Case, 112 U. S. 377, 5 Sup. Ct. 184, as limited and explained in the Baugh Case, 149 U. S. 369, 13 Sup. Ct. 914, was the vice principal of the defendant, and, if the collision occurred through his negligence, the defendant was liable. (2) The conductor of the second train was a fellow servant with the plaintiff, and, if the collision was caused solely by his negligence, the defendant would not be liable. Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. 322; Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914; Railroad Co. v. Andrews, 1 C. C. A. 636, 50 Fed. 728; Railroad Co. v. Clark, 6 C. C. A. 281, 57 Fed. 129; Mase v. Railroad Co., 57 Fed. 286; Railroad Co. v. Smith, 8 C. C. A. 663, 59 Fed. 996. (3) The agent of the defendant who was clothed with the duty of sending out the second train, and giving the orders as to how it should be run, having the control, management, and direction of its movements, whether such agent was the train dispatcher, master mechanic, division superintendent, or other agent of the defendant, was the vice principal of the defendant, and, if the collision occurred by his negligence, the defendant would be liable. Railroad Co. v. Wilson, 1 C. C. A. 25, 48 Fed. 57; Railroad Co. v. Charless, 2 C. C. A. 380, 51 Fed. 562; Railway Co. v. Novak, 9 C. C. A. 629, 61 Fed. 583; Hough v. Railway Co., 100 U. S. 214; Railroad Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590; Railroad Co. v. Baugh, 149 U. S. 368, 386, 13 Sup. Ct. 914; Railway Co. v. Daniels, 152 U. S. 684, 14 Sup. Ct. 756.

Did the court err in any of its rulings? Is the charge of the court, taken in its entirety, in accordance with the general principles we have announced? At the close of the testimony, the defendant moved the court to give the following instruction:

"In this case there is no evidence that the defendant the Northern Pacific Railroad Company was guilty of any negligence which caused the accident by which plaintiff was injured, or which contributed thereto, and that, if there was any negligence, it was that of the engineer and conductor, or one of them, of the second train; and, such conductor and engineer being fellow servants of the plaintiff, there would be no liability therefor on the part of the railroad company, and therefore you will return a verdict for the defendants."

The contention of defendant in support of this instruction is that it appears from the evidence that the collision occurred by reason of the conductor of the second train disobeying the general rules of the company which required him to keep his train 10 minutes behind the first train, and it is claimed that, if he had obeyed this rule, the collision would not have occurred. But this rule of the company must be taken in connection with rule 228, offered by the plaintiff, which declares that "it is the duty of dispatchers to hold following sections of trains when they are known to be running too close, and keep them the prescribed

time and distance apart," and of the further fact that the second train was running under telegraphic orders, without any schedule or time card. It devolved upon the company to show that it had in all respects exercised due and reasonable care in providing for the safe running of the second train. The court would not, under the facts, have been justified in taking the case from the jury. The case should not have been withdrawn from the jury unless the conclusion necessarily followed, as matter of law, that no recovery could be had upon any view which could be properly taken of the facts which the evidence tended to establish. Railroad Co. v. Cox, 145 U. S. 594, 12 Sup. Ct. 905.

There were other questions in this connection, not embodied in the instruction, that should have been and were left to the jury to decide. It was a question of fact for the jury to determine, from all the evidence, whether the railroad company was guilty of any negligence in the management of the second train which contributed to the accident, and, if negligent, whether the collision would have occurred if the company had not been negligent in sending out the second train without notifying the conductor thereof that the first train would stop at Clyde Spur, which was not a regular station. The mere fact that an injury to a servant was partly caused by the negligence of a fellow servant does not relieve the master from liability therefor, if it clearly appears that the accident which caused the injury would not have happened had not the master himself been negligent. Railway Co. v. Cummings, 106 U. S. 700, 1 Sup. Ct. 493; 7 Am. & Eng. Enc. Law, 828, and authorities there cited; Coppins v. Railroad Co. (N. Y. App.) 25 N. E. 915; Town v. Railroad Co. (Mich.) 47 N. W. 665. The instruction asked by defendant entirely ignored the question whether there was any negligence upon the part of the defendant in setting the second train in motion without any schedule or time card as to how it should be run, and in failing to notify the conductor of said train that the first train would stop at Clyde Spur, and whether the collision occurred by reason of such negligence. There was certainly sufficient evidence to justify the submission of this question to the jury. Upon this ground alone, the court did not err in refusing to instruct the jury to find a verdict for defendant.

The defendant then asked the court to instruct the jury as follows:

(1) "In determining the question of whether the defendant the Northern Pacific Railroad Company was guilty of negligence in the management of these trains, or either of them, the jury are instructed that they may consider the rules of the company which have been read in evidence; and that if it appears therefrom that the running and conduct of this second train was provided for, and that the accident was caused by the engineer or conductor of the second train in disregarding such rules, then your verdict must be for the defendants."

(2) "If the jury find from the evidence in this case that the accident which caused the plaintiff's injury was caused by the negligence of the conductor or engineer of the extra train, in following the first train too closely, or by running down the grade at too high a rate of speed, or in not keeping the extra train under proper control, or by any other act or neglect of the conductor or engineer of the extra train, then I instruct you that the defendants are not liable, and that you shall return a verdict for the defendants."

The record shows that the court gave the first instruction as asked by defendant, adding thereto the following qualification: '

"Unless it appeared that the conductor of the train, or some one under whose orders he was acting, had authority in the special case to deviate from the rules."

This qualification, under the facts, was not erroneous. It was not necessary for the court, in its charge, to have repeated the second instruction asked by defendant. The principle that, if the collision occurred by reason of the negligence of the conductor of the second train in disobeying the rules of the defendant, the plaintiff could not recover, substantially covers every proposition embraced in the second instruction, subject only to the qualification which was added by the court.

Was there any error committed in other portions of the charge? The court, after correctly stating the rule of law as to the liability of the railroad corporation for the negligence of its conductors and agents, its duty to its employés, and the risks assumed by its employés, among other things, stated that the duty which an employer owes to his employés, whether the employer is a corporation or natural person, to provide proper means, facilities, and appliances for carrying on the work with reasonable safety cannot be so delegated to any subordinate or agent so as to exempt the employer from liability to an employé if an injury happens to him through a neglect of that duty. "So that whoever is placed by the employer in the position where he has the responsibility and the right and power to supply these means of safety, and to guide the operation of dangerous agencies, whether he is a conductor on a freight train or a superintendent or the train dispatcher, or whoever is clothed with that power and charged with that responsibility, is deemed in law as the representative of the employer, and the employer is responsible for his acts and his neglects." The portion of this charge above quoted is objected to; but we are of opinion that the principle enunciated therein is clearly within the third rule hereinbefore announced as a correct rule to be applied to the facts of this case, and that it is supported and sustained by the authorities cited in support of said rule.

The other portions of the charge to which exception is taken follow immediately after the portion quoted, and may be classified under three heads:

(1) "Now, applying that general principle to this case, if the evidence shows you that the conductor. of either one or both of these trains was clothed with authority to control the movements of the trains, without any restrictions upon their judgment and discretion, if they were placed there to exercise judgment and discretion, with power to control the movements of those trains, and charged with responsibility for accidents that might occur through neglect to observe proper precautions and use reasonable care in handling the trains, they would represent the employer, and their neglect would fasten responsibility on the employer. If the conductors were not the agents of the corporation, having the authority and responsibility for the management and operation of the trains, then whoever else did have that responsibility and power would be the one representing the company."

(2) "Now, it is not charged that there was any negligence in the management of the first train, except the negligence of the conductor; and if the

conductor was the responsible man in managing that train, and he was negligent, the defendants are liable for that. If he was not negligent, the defendants are not liable for this accident. If he was not negligent, the defendants would not be liable for this injury by reason of its occurrence; and just so, if the proof fails to show this jury that the conductor had the power and responsibility to manage the trains, the defendants would not be liable, even if he was negligent, because, if he was acting in subordination to somebody else, who had the power and controlled the operations of the trains, he would occupy the position of a fellow servant to the plaintiff, and the defendants would not be liable for his negligent acts."

(3) "If there is no liability on account of the negligence of the conductor of the first train, then the question remains whether there was any liability by reason of the mismanagement of the second train. This train is described in the pleadings and in the evidence in the case as a special or extra train, called 'a wild train,' running under special orders as to the time it was to make, where it was to go, and when it should reach the different stations; and it was the duty of the defendants to have some one in control of the operations of trains on that road to prevent that train from coming into collision with the regular trains on the road, and whoever was chargeable with that duty would represent the employer, so that the defendant corporation would be liable if he neglected his duty, whether it be the conductor of the train, or any one else in authority to control the movements of the trains running over that piece of road."

We here add another portion of the charge, not objected to:

(4) "Now, you will consider from the evidence in this case whether there has been any negligence on the part of any one having the authority and power and responsibility for the operation of the road as to the second train. If there was such neglect, the defendants are liable for the consequences to the plaintiff in this case of that neglect. If there was no such neglect of duty, there would be no liability, and no ground upon which the plaintiff can insist that the defendants shall compensate him for the injury he has sustained."

In considering the portions of the charge to which exceptions are taken, it may be conceded that sentences here and there may be found which if separated from the context, where the correct principle is announced, might either be calculated to mislead the jury, or, if standing alone, unaided or unexplained in other portions of the charge, might be considered erroneous. But this method of construing a charge is unfair to the trial court. Its charge upon any particular subject must be considered in its entirety.

The question which is to be determined by the appellate court is not whether some technical error may not have inadvertently crept into the charge, but whether the charge, when taken as a whole, has presented the law of the case fully, fairly, and correctly to the jury. Crew v. Railway Co., 20 Fed. 94; Railway Co. v. Novak, 9 C. C. A. 629, 61 Fed. 574, 588; Railroad Co. v. Horst, 93 U. S. 295. Notwithstanding the severe criticism of the learned counsel for defendant as to the expressions of the court in certain portions of the charge, our conclusion is that the general principles of the law applicable to the facts of this case, as we have heretofore announced them, were constantly recognized in the charge given by the circuit court. The charge of the court in its entirety is not fairly susceptible of the construction sought to be placed upon it by counsel. The jury evidently did not understand from the charge that the defendant would be liable for the negligent acts and conduct of the conductor or engineer of the second train. No portion of the charge was intended to convey any such meaning. All

that is said about the conductors fastening responsibility upon their employer by their acts, in subdivisions 1 and 3, when read in the light given by the other portions of the charge, refers to the status of the conductors with regard to their respective trains, whether under the facts they were to be considered as vice principals of the master or fellow servants with the other employés. This is made perfectly clear. In subdivision 2 the court told the jury that if the conductor of the first train was the responsible man—the vice principal of defendant—in managing that train, and he was negligent, the defendant would be liable for his negligence; that, if he was not negligent, the defendant would not be liable; and further on the court told the jury that, if the conductor of the first train did not have the entire charge, power, and responsibility of managing the train, the defendant would not be liable, even if the conductor was negligent, because if he was only running the train in subordination to somebody else, who had the power and authority to direct the movements of the train, "he would occupy the position of a fellow servant to the plaintiff, and the defendant would not be liable for his negligent acts." This same idea is again announced in subdivision 3 with reference to the conductor of the second train.

Who was the person that had the charge and responsibility of running the trains? This question was placed before the jury in many different phases. But is it not clear that the jury, as sensible men, could not have understood the latter portion of subdivision 3 as stating that the conductor of the second train was a vice principal of the defendant, and that, if he was negligent, the defendant would be liable? The instructions and charge of the court must be considered in the light of the evidence. All of the testimony tended to show that the conductor of the second train did not have the exclusive management and control of the train. There was no evidence tending in the slightest degree to show that he did. He was running the train under telegraphic orders, without a schedule or time card. Neither under the testimony nor under the instructions could the jury have found as a fact that the conductor of the second train was the vice principal of the defendant, for whose negligent acts it would be responsible. It is manifest that the jury could not have been misled upon this point by the language of the court in the latter part of the charge in subdivision 3, even if it should be conceded as being technically erroneous.

It is urged that certain portions of the charge are erroneous in this: that the jury were therein authorized to fix the liability upon any employé of the defendant, and did not require that its negligence should be proven against any particular agent. This position is not well taken. All that is said about "some one else" or "whoever else" had reference to the agent of the corporation who had the care, management, and control of the movements of the trains. Whoever was invested by the corporation to provide for the running of the trains was the vice principal of the defendant. These portions of the charge were in accordance with the general principles we have previously announced. There is nothing said

in the charge that would justify the **jury in fixing** the liability of the defendant indiscriminately upon any one of its employés. The jury must necessarily have understood the charge to be that if the particular agent of the defendant who put the second train in motion, and who was clothed with the power and authority to control and direct its movements, was guilty of negligence in failing to properly provide for the running of the train, and that if he failed to notify the conductor of the train at what stations or places the first train would stop, and that the conductor of the second train obeyed his orders and the rules of the corporation in regard to the running of such train, then the defendant would be liable; but if the conductor of the second train disobeyed such orders or disregarded the rules of the company as to the manner in which its trains should be run, and the accident was solely caused by his negligence, then it would not be liable. It was the duty of the defendant, when it put the second train in motion, to make suitable provision, and to exercise ordinary and reasonable care, for its safe management, to guard against danger or accidents. This was a positive duty upon the part of the defendant, which it owed to its employés; and if this duty was delegated to any particular agent, and such agent was negligent in the performance of that duty, his negligence in that respect is the negligence of the defendant. This principle is distinctly announced in the Baugh Case, where the court, in speaking of the positive duty which the master owes to his employés, said:

"That positive duty does not go to the extent of a guaranty of safety, but it does require that reasonable precautions be taken to secure safety; and it matters not to the employé by whom that safety is secured or the reasonable precautions therefor taken. He has a right to look to the master for the discharge of that duty, and if the master, instead of discharging it himself, sees fit to have it attended to by others, that does not change the measure of obligation to the employé, or the latter's right to insist that reasonable precaution shall be taken to secure safety in these respects. * * * If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master; but, if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is liable therefor."

The charge of the court is not in opposition to these views. The proof shows in this case that the conductor of the second train was running it under telegraphic orders, and that he was not notified that the first train which he was following would stop at Clyde Spur. It was a question for the jury to determine whether such action upon the part of the defendant, in providing for the running of the second train, was the exercise of that ordinary care and prudence which the law demands. If it was not, and the collision occurred by reason of the neglect of such duty, then the defendant was liable for the injury which plaintiff received.

Sheehan *v.* Railroad Co., 91 N. Y. 332, is in many respects a case directly in point. There the railroad company was prosecuting its business by running its trains over a single-track railway, and, through the direction of its superintendent, it put a wild train in motion, running irregularly, without reference to any schedule or

.to its regular trains, and moving by special orders. The fireman of the regular train was injured, as claimed by him, by reason of the negligence of the agent of defendant in sending certain orders to the conductors of the respective trains. The court, after announcing the general rule that, "where the master delegates to another entire control over a branch or circumstance of his business, the person to whom such power is delegated stands in the place of the master as to all duties resting upon him to his servant, and his acts or omissions relative thereto are the acts or omissions of the master himself," held that the trial court did not err in submitting to the jury the question "whether the defendant had omitted the doing of anything which it ought reasonably to have done to prevent the casualty which resulted in the plaintiff's injury."

Patterson, in his work on Railway Accident Law (section 296), speaking of the duty of railways to their servants in the operation of their lines, among other things, says:

"A railway is not negligent to its servants if it varies from its regular time-table in running its trains, provided that it gives to its servants reasonable notice of any change which, if unknown to them, may endanger their safety; but where, on a single-track line, a special train is ordered to run when a regular train is due, and, no effort having been made to hold the regular train, a collision ensues, and a servant is injured, the railway is liable, for the negligence of its superintendent is its negligence."

The judgment of the circuit court is affirmed, with costs.