WELCH *v.* JACKSON & BATTLE CREEK TRACTION CO.

1. TRIAL—INSTRUCTIONS—REQUESTS—REFUSAL—PRORPIETY.
    Where requests to charge are presented in such multitude and length as to make it difficult to analyze and arrange the material into ꞙorm, no impropriety arises from a refusal of all of them and the giving by the circuit judge of a proper charge in his own language.

2. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE OF MASTER—EVIDENCE—SUFFICIENCY.
    In an action against an electric railroad company for injuries to a conductor in a rear-end collision, evidence examined, and *held,* to make a question for the jury whether the brakes upon plaintiff's car were in a reasonably safe condition, and whether there was fault on defendant's part in failing to discover the defect.

3. SAME—ASSUMPTION OF RISK—KNOWLEDGE OF DEFECT—INSTRUCTIONS—SUFFICIENCY.
    *Held,* also, that the testimony was not conclusive that plaintiff knew there was anything out of condition about the car, and that defendant's rights were fully protected by instructions to the effect that if plaintiff had either actual or constructive knowledge of the defective condition of the car he

must be held to have assumed the risk, and could not recover.

4. SAME—CONCURRING CAUSE—NEGLIGENCE OF FELLOW-SERVANT.
    The jury having found that the defective brake on plaintiff's car was a contributing cause of the injury, the defendant was not excused by the fact that the operatives of the leading car, fellow-servants of plaintiff, were also guilty of negligence contributing to the injury by failing to observe a safety rule.

5. NEGLIGENCE—CONCURRING CAUSES.
    Two contributing causes of an injury are concurring where the concurrence of both was essential to produce it.

6. MASTER AND SERVANT — INJURIES TO SERVANT — RAILROADS — NEGLIGENCE OF DISPATCHER—QUESTION FOR JURY.
    In an action against an electric railroad company for injuries to a conductor in a rear-end collision, it was error to submit to the jury the question whether it was negligence for the train dispatcher to send out a crippled car and then to send out plaintiff's car, with a defective brake, to follow it, there being no evidence that the dispatcher knew the brake to be defective.

7. EVIDENCE—EXPERTS—OPINIONS—PROPRIETY — TRAIN ORDERS— NEGLIGENCE.
    Where, in view of the knowledge possessed by the train dispatcher of an electric railroad as to the defective condition of the cars affected by an order, it was not negligence for him to give an order that one should follow the other between certain stations, experts in electric road management should not be permitted to testify that the giving of the order, under the circumstances, was negligence.

Error to Calhoun; North, J.  Submitted June 16, 1908. (Docket No. 67.)  Decided October 5, 1908.

Case by Alpha W. Welch against the Jackson & Battle Creek Traction Company for personal injuries.  There was judgment for plaintiff, and defendant brings error. Reversed.

*Sanford W. Ladd*, for appellant.
*Richard Price*, for appellee.

Montgomery, J.   This action was brought by plaintiff to recover for injuries received while acting as conductor on one of defendant's cars.   The injuries complained of arose out of a rear-end collision on defendant's road at a place known as "Bear Creek Crossing," between Battle Creek and Marshall, at a point about 11 miles east of Battle Creek.   The car upon which plaintiff was riding at the time of the injury was limited car No. 32, train No. 12. It collided with local car No. 47, train No. 10, both being east bound.   The negligence charged in the various counts of the declaration was, *first*, in sending out car No. 47 in a defective and disordered condition from Battle Creek to Albion ahead of plaintiff's car, and in issuing the order to plaintiff to follow No. 47, without informing plaintiff of the condition of the car; *second*, failure to keep the car and equipment and braking apparatus on plaintiff's car in a reasonably safe condition, or to adjust the machinery which controls the pressure of air or braking apparatus; *third*, failure to use reasonable and proper care in inspecting plaintiff's car, brakes, and air equipment and braking apparatus.

Car No. 47 left the Albion shops, which are about 1½ miles west of Albion, east bound for Jackson on the morning of the accident.   It arrived at Jackson, left Jackson west bound for Battle Creek, passing the shops at Albion. Mr. Berry was the conductor and Mr. Barker the motorman of this car.   The first trouble that the car had that morning was on the trip west from Jackson to Battle Creek, at Dickey's switch, about a mile and a half west of Marshall and about 11 miles east of Battle Creek.   When the local car arrived at Battle Creek, Mr. Barker, the motorman, ran the car to the freight house, and Mr. Berry, the conductor, reported its condition to the dispatcher. Mr. Barker telephoned to the Michigan Traction Company's repair shop, and had some men come up to repair the car.   The car was in Battle Creek 20 or 30 minutes. The conductor's only knowledge of the condition of the

car was the report of the motorman made to him.   The motorman reported to the conductor that the car had been repaired, and that he, the motorman, was ready to go. Mr. Berry then called up the dispatcher and reported that the car had been repaired.   The dispatcher issued the following order to local car No. 47, which was train No. 10:

"To Conductor and Motorman at Battle Creek:   Meet No. 7 at Battle Creek double tracks.   Run ahead of No. 12."

No. 7 was composed of the limited car No. 32 running west.   The same car, when running east, was known as train No. 12.   The local car, train No. 10, east bound from Battle Creek to Marshall, started out after receiving the order just set forth.   The first trouble which this car had which was noticed after leaving Battle Creek was at Ceresco Hill, which is about midway between Marshall and Battle Creek, and about 7 or 7½ miles east from Battle Creek.   The motors smoked, and there was trouble with them.   The car was losing ground and running behind time.   The distance from Ceresco Hill to Bear Creek Crossing was about 4½ miles, and the local had trouble all the way.   The conductor of the local car knew that the car was losing time and was having trouble from Ceresco to Bear Creek Crossing.   There were torpedoes and a flag on the local car.   The local car continued to run until it got to Bear Creek Crossing, when the car broke down. After it stopped, the limited crashed into the local, and plaintiff received the injuries which furnish the basis of this action.   As the local car was on Bear Creek Crossing, Mr. Aueringer got off, and went with a flag back to flag the limited car.

The limited car No. 32 started out on the morning of the accident from Albion shops at 6:35 east bound for Jackson. On the trip to Jackson 10 or 12 stops were made.   At one of these stops, about three-fourths of a mile west of North Concord, the car ran past the point where some section-men wanted to get off.   With this exception, the brakes

on the car apparently worked all right.  Coming out of Jackson, west bound, the limited car made six stops before it made the stop at the car shops west of Albion. The motorman reported nothing wrong with the brakes, although it was his duty to report them as being out of order at the shops if he discovered anything wrong.  He testified, however, that the car acted funny that morning; that it did not act right to him; that he had trouble again with the car in Jackson approaching up Jackson street. He also said that the car differed from other cars, and "sometimes I got the response that I should when I applied the air, and other times I did not;" that there were other stops when he thought he was going by, but did not go by.  In response to the question, "You were not able to get action of the brakes," he answered:

"Sometimes I was and sometimes I was not.  I made a good stop, just as good as the car ever made, and then again it did not act as it ought to, required more air than it ought to stop it"—and that the car had been acting that way all the morning.

He further testified:

"I think that is where the trouble was, the air feeding slow.  It was feeding slow all the morning.  It did not take the air the way that some cars do.  It took the air very slow.  I never studied the air brake business, and I don't know.  I think the difficulty was that.  I could not swear positive.  I thought that was the trouble, in the air.  I had them act that way before."

He explains not having reported the condition of the car by saying that he was not positive that it was out of order.  He did not discover just what the matter was.

"The car was not acting just exactly right.  I never had anything to do with the repairing and building of cars myself."

The motorman testified that he thinks he said to the plaintiff that he "did not see why those brakes were not working all right.  They were up in good shape;" but that he was not positive whether he told him just the ex-

act condition or not. Plaintiff, however, testified that he had no recollection of any such conversation, and that he did not know or have any intimation that there was anything wrong with the brakes on this car.

The order upon which plaintiff's car was running was as follows: "No. 10 runs ahead of you to Albion"—signed by the dispatcher. As No. 10 was regularly due at Albion before plaintiff's train was due to leave Battle Creek, this order was notice to plaintiff that the local car was ahead of them and behind time. In other words, plaintiff's train No. 12 would have been given a clear track had No. 10 been on time and ahead of the limited car No. 12. Bear Creek Crossing, where the accident occurred, was at the foot of a descending grade, and around a curve, when a car was running east from Battle Creek to Jackson, as were train No. 10 and No. 12 just prior to the accident. The testimony on behalf of the plaintiff tended to show that motorman Kelley, as soon as he received the warning from the flag, undertook to bring his car to a stop with the use of the brakes, but that, as he found he was not going to be able to stop in the distance, he reversed the car, but testifies that he thinks he would have done better if he had stuck to the brakes.

A rule of the company was introduced as follows:

"Bulletin No. 103.

"Albion, Mich., Dec. 19, 1903.
"To Conductors and Motormen:

"If at any time the track is obstructed, or a train is delayed for any cause and cannot make its running time, you will protect such obstruction or your train with flags and torpedoes. A flag must be sent back at least fifteen transmission poles, the first torpedo to be placed on the rail at a distance of fifteen poles from place of obstruction, the second at a distance of twenty-five poles, and to remain in such position until the train that is to be flaged has arrived or flagman is called in. When flag is called in, the flagman will place another torpedo twenty feet from the last one put down, to indicate that flagman has been called in, taking up the first torpedo put down. A train running over one torpedo will stop at once. Two

torpedoes twenty feet apart indicates flag has been called in, and proceed cautiously until you ascertain track is all clear.   *   *   *   When flagman is to be called in from the west, motorman will give four long blasts of the whistle, when called in from the east, give six long blasts of the whistle.

[Signed]   "E. S. LOOMIS, Superintendent."

The case was submitted to the jury under instructions which embodied the following propositions: *First*, that the trainmen of both trains Nos. 10 and 12 were fellow-servants of the plaintiff, and that for any injury resulting from the negligence of such fellow-servants the plaintiff could not recover; *second*, that the train dispatcher was not a fellow-servant of the plaintiff or of the trainmen, but was a vice-principal; *third*, that it was a question for the jury as to whether the train dispatcher was guilty of negligence in sending out train No. 10 in its crippled condition after receiving a report from motorman Barker that it was out of repair, and in directing train No. 12 to follow train No. 10 upon the order given to the conductor of train No. 10; *fourth*, that it was also a question for the jury to determine as to whether the braking apparatus on the car of train No. 12 was out of repair and in an unfit condition for use, and as to whether the defendant was guilty of negligence in failing to inspect and repair this car; *fifth*, that, if the defendant was found to be guilty of negligence in either of the two particulars stated, either as to the issuing of the order to plaintiff's car to follow No. 10 in its crippled condition without notice of its being in such condition, or in the failure to inspect and keep in repair the braking apparatus of No. 12, the plaintiff would be entitled to recover, even though negligence of a fellow-servant of the plaintiff concurred with that of the defendant in producing the injury, provided the jury should find that the plaintiff would not have been injured but for the negligence of the defendant either in its failure to use reasonable care in adjusting the brakes on the limited car, or in issuing the order given to plaintiff in view of the alleged condition of the local car.

The record contains 108 assignments of error. There were presented to the trial court 75 requests to charge. The court undertook to give a connected charge to the jury, and refused these requests to charge, stating as a reason that their number and length were such that it was not possible to read them over, pass upon them, and arrange the order of the acceptable requests, and because many are so similar as to lead to confusion if given. Some criticism is made of this disposition of the requests. We have examined these requests, and find that they cover 35 pages of the printed record. It is not surprising that the circuit judge found difficulty in analyzing and arranging that amount of material into form, or that he should have thought it better to give in his own language the rules of law which should govern the jury in their deliberation. The practice of presenting voluminous requests is certainly not to be encouraged any more than is the practice of assigning error upon every ruling of the trial court in the expectation of at some time in the future sifting the wheat from the chaff, and presenting the case to this court in a manner to be readily grasped and understood. In the defendant's brief an attempt has been made to group the assignments of error, and counsel has discussed several distinct questions, which will receive consideration in the order he has adopted.

It is first contended that a verdict should have been directed for the defendant. This contention rests upon various grounds, and, of course, involves the question of whether there was negligence in any of the particulars alleged in the declaration; and, secondly, whether, if there was such negligence, such negligence was the proximate cause of the injury to the plaintiff. It is enough for the present to say that there was some testimony from which the jury might have found that the braking apparatus on the car in control of the plaintiff was not in a reasonably safe condition, and that there was fault on the part of the defendant in failing to discover it, as the testimony shows that the practice was to inspect these cars,

including the braking apparatus, every evening when the cars ran into the repair shop at Albion.   Nor is the testimony conclusive that plaintiff knew that there was anything out of condition about the car, and the defendant's rights were fully protected in this regard by the instruction of the circuit judge to the effect that if he had either actual or constructive knowledge of the defective condition of his car—referring to the braking apparatus—he could not recover in consequence of any injury resulting to him by reason of such defective condition, because, under such circumstances, he would be held to have assumed the risk incident to operating the car in its known condition, and in instructing the jury that constructive knowledge would arise if the circumstances were such that, in the exercise of reasonable care in the discharge of his duties, he could not have learned of the defective condition of the car; that in such case he would be charged with knowledge; and that, if in such circumstances he continued to operate the car before it was repaired, he assumed the risk and could not recover.

It is contended that the accident could not have happened if rule No. 103 (that providing for placing torpedoes on the track as a warning when the car is disabled) had been observed, and that the failure to observe this rule was the proximate cause of the injury to plaintiff, and that, as this failure to observe the rule was the negligence of a fellow-servant, the plaintiff's case must fail.   We cannot say that this negligence was the sole proximate cause of the injury.   Under the instructions given, the jury must have found that the accident would not have happened but for the defective brake or other negligent act of the principal.   There was evidence from which the inference might be drawn that the defective brake was a contributing cause of the injury.   The relation of this cause to the injury was direct, and the defendant was not excused by the fact that a co-servant's negligence also contributed to the result.   *Pittman* v. *Railroad Co.*, 231 Ill. 581; *Southern Pacific R. Co.* v. *Allen* (Tex. Civ.

App.), 106 S. W. 441; *McDonald* v. *Railroad Co.*, 108 Mich. 7. The two contributing causes must be held to be concurring where, as in this case, if plaintiff's contention be supported by the proofs, the concurrence of both was essential to produce the injury. See *Pittman* v. *Railroad Co.* and *Southern Pacific R. Co.* v. *Allen*, supra; *Northern Pacific R. Co.* v. *Poirier*, 67 Fed. 881, 15 C. C. A. 52, 53; 2 Labatt on Master and Servant, § 814, and cases cited in note 3.

A more serious question arises from another feature of the case, namely, the submission to the jury of the question of whether it was negligence for the train dispatcher to send out the local in its crippled condition and to send out the limited to follow the local, and permitting so-called experts to testify that in their opinion such an order was improper. We feel constrained to hold that in both of these rulings the circuit judge erred. In dealing with this question, it is to be kept in mind that whatever defect, if any, there was in the braking apparatus of car No. 32, was, so far as this record shows, not known to the train dispatcher. It was not reported to him. In giving the order for the running of the two trains, then, the dispatcher had the right to assume that No. 32 was in proper condition, even if it be assumed that he was bound to know that car 47 was crippled. Was it a negligent act to send out car 47 ahead of plaintiff's train, in view of the rules of the company? This must be determined by deciding what the dispatcher had reason to apprehend. It is possible that some delay of the limited might have been apprehended; but if the train crew of the local had observed the rules of the company, and the car of the limited had been in condition, and the braking apparatus working properly, it is perfectly clear that no collision of the two cars could have occurred. This being so, it is equally clear that the issuing of the order was not negligence, and it is still more clear that the so-called experts should not have been permitted to give an opinion that it was. The case should have been put to the jury upon the single

question of whether there was fault in the inspection of the braking apparatus of No. 12, and, if there was, whether the defect in such apparatus, which might have been discovered by a proper inspection, was a contributing cause to the injury of the plaintiff.

The judgment is reversed, and a new trial ordered.

OSTRANDER, HOOKER, MOORE, and MCALVAY, JJ., concurred.