TAYLOR v. HOME TELEPHONE CO.

NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — VOLENTI NON FIT INJURIA.

> In an action for negligent injuries sustained by plaintiff, a
> caretaker employed by an athletic association, caused by a
> stream of water that burst from the city water main, and
> was forced into a second-story window, which plaintiff en-
> deavored to close in order to protect the property, her act
> being voluntary, in the presence of an obvious danger, con-
> stituted such contributory negligence as to preclude any re-
> covery for the alleged negligence of defendant in damaging
> the main.

Error to Wayne; Donovan, J. Submitted October 12, 1910. (Docket No. 47.) Decided December 7, 1910.

Case by Theresa V. Taylor against the Home Tele-
phone Company for a negligent injury. A judgment for
defendant on a verdict directed by the court, is reviewed
by plaintiff on writ of error. Affirmed.

*Wesley L. Nutten*, for appellant.

*Thomas A. E. Weadock*, for appellee.

It is alleged in the declaration that on July 29, 1907, the
defendant's employés in making an excavation in an alley
in the city of Detroit negligently removed a service cock
from an 8-inch city water main carrying pressure, laid 4½
feet under ground, which they had uncovered. As a con-
sequence water escaped and was forced into the second-
story open window of a building into apartments occupied
by a women's athletic association. Plaintiff, who was
housekeeper or caretaker of the apartments, attempted to
close the window, was knocked down by the force of the
stream of water, her clothing soaked with water, and as a
consequence she was chilled, became sick and disordered,

was afflicted with rheumatism, etc., from which she still suffers, and has been obliged to lay out money in an effort to cure herself.   The plea is the general issue, with notice of special defenses, which, because of the course pursued at the trial, need not be referred to.

At the trial plaintiff gave testimony tending to prove the said allegations concerning her conduct and its consequences, and gave as the reason for exposing herself her desire to prevent injury to the room and its contents.   Ill effects from her wetting appeared, she said, the night succeeding the occurrence.   A witness, describing himself as an emergency man for the city water department, testified that he repaired the pipe, a five-eighths inch opening, from which a plug, without a thread—evidently driven in—had been expelled or removed.   It does not appear that other testimony was introduced, but the following colloquy took place :

"*The Court:* Have you any other testimony ?

"*Mr. Nutten:* Dr. Hodge.

"*The Court:* We do not want the doctor yet.

"*Mr. Weadock* to *Mr. Nutten:* Is that all the testimony in support of your case, except the medical testimony ?

"*Mr. Nutten:* No, sir; I did not subpœna them.   I knew the witnesses I had here.

"*The Court:* The main thing is this: Can you make the main case of the main witness, Mrs. Taylor, substantially any different from what you have now ?

"*Mr. Nutten:* Yes, I think so.

"*Mr. Weadock:* How can he contradict his own witness' statement ?

"*Mr. Nutten:* I do not want to do that.

"*The Court:* All you can do, as I take it, is to give cumulative evidence.   That is more of the same kind of the order already given, the water pipe was opened and that it flooded these rooms, is that right ?

"*Mr. Nutten:* I want to show what kind of a plug was in there by the water board.   I want to show what the condition was.   I want to show that there were certain conditions existing there that would warn this defendant that that plug was liable to come out, if not handled in proper condition.

"*The Court:* That does not change the case one iota. In our Supreme Court, in a decision by Judge Campbell, they have held that before. Where a woman went to rescue a pet horse and take it out of a burning barn and where they could see their danger, and this happened in broad daylight. The law will not recompense a known danger. People walk into danger and take their chances. I can give you a case absolutely. This woman walked into danger.

"*Mr. Nutten:* This case comes under the rule I will call your attention to, found in some other Michigan cases.

"*The Court:* I will take them right now.

"*Mr. Weadock:* It seems to me under the statement of counsel the case is out.

"*Mr. Nutten:* No, sir.

"*Mr. Weadock:* If you will state why, I think I will admit it.

"*Mr. Nutten:* I will attempt to show that these people in digging around this service cock knocked it out negligently.

"*Mr. Weadock:* Suppose they did?

"*Mr. Nutten:* If that is conceded.

"*Mr. Weadock:* No, sir; not conceded, only I am saying, supposing it for the sake of the argument.

"*The Court:* I have the case where the woman had more reason than this; endangering her pet horse.

"*Mr. Weadock:* If this woman had stayed where she was, she would have been absolutely safe.

"*Mr. Nutten:* Here was an emergency that suddenly came upon this woman. She was there in the orderly performance of her duty.

"*Mr. Weadock:* If that is your case, then I move to direct a verdict for the defendant, because the plaintiff's own testimony shows she has no case. Now, it is squarely before the court."

After hearing counsel, the court directed a verdict for defendant, and judgment was entered on the verdict. Proper exceptions were taken to the ruling of the court, and the case presents the question whether, conceding the defendant to have been negligent as alleged, plaintiff, upon her testimony, is entitled to take the verdict of a jury.

OSTRANDER, J. (*after stating the facts*). The plain-

tiff's act was voluntary, the wetting she got was inevitable. Did she, as defendant contends, assume all the consequences of the wetting, whatever they might be? The principle expressed in the maxim, "*Volenti non fit injuria*," is subject to qualifications, which are sometimes stated as qualifications of the rule, but are quite as often recognized as rules in determining the proximate cause of an injury and the contributory negligence of the injured person. Courts have frequently refused to so apply the principle as to deny to one who has at actual risk of injury sought to save property or a person from damage or destruction the right to recover damages. A valuable collection of authorities appears in the note to *Fisher* v. *Railway Co.* (Va.), 2 L. R. A. (N. S.) 954. See, also, 1 Thompson on Law of Negligence, § 185 *et seq.*

In *Cook* v. *Johnston*, 58 Mich. 437 (25 N. W. 388, 55 Am. Rep. 703), the plaintiff entered a burning shed to release a horse belonging to her husband and was burned. Under the circumstances, and as matter of law, the right to recover was denied. In *Harris* v. *Township of Clinton*, 64 Mich. 447, 455 (31 N. W. 425, 428, 8 Am. St. Rep. 842), it is said, citing *Cook* v. *Johnston* and other cases:

"If the danger is known, and can be easily avoided, a peril voluntarily and unnecessarily assumed may constitute such contributory negligence as would preclude a recovery."

It was held that the question was properly submitted to a jury. In *La Duke* v. *Township of Exeter*, 97 Mich. 450 (56 N. W. 851, 37 Am. St. Rep. 357), it appeared that plaintiff deliberately attempted to prevent the struggles of his horse, whose feet and legs were fast in a defective bridge. There was, of course, some risk of injury from the movements of the animal. How much risk depended upon many circumstances. He was injured by the horse, and the contention that the negligence of defendant was not the proximate cause of his injury was overruled. In *Milbourne* v. *Power Station Co.*, 140 Mich. 316, 321 (103 N. W. 821, 823, 70 L. R. A. 600), it is said:

"The fact that one takes a risk in the performance of a duty is a circumstance entitled to great weight in determining whether his conduct was negligent."

In these, as in all of the cases which have been examined, there was, or was supposed to be, a chance, more or less probable, of escaping any direct consequences of defendant's negligence. In the case at bar no such chance existed or could have been supposed to exist. May the plaintiff say that the consequences other than a mere wetting were not anticipated by her, and therefore the peril of them was not assumed, and at the same time insist that they were the direct result of defendant's negligence—of the single occurrence—and defendant must respond in damages? We are of opinion that she may not do so, and that the maxim referred to must be applied.

The judgment is affirmed.

BIRD, C. J., and BROOKE, BLAIR, and STONE, JJ., concurred.