MARGARET MARTIN, ADMINISTRATRIX, PLAINTIFF IN ERROR, v. NORTH JERSEY STREET RAILWAY COMPANY, DEFENDANT IN ERROR.

Argued November 18, 1910—Decided June 19, 1911.

In an action brought to recover damages for the death of a man employed as a conductor of a trolley car, it appeared that a flash of light in the street was observed by one of the witnesses, and that upon going to the front of her house she observed that a car had just passed. Witness also observed a wire partly in the air and partly on the ground "alight." A car passed the place where the wires were down and emitted a great light. The conductor got off and started to walk back. Witness called out, "For God's sake don't come any closer, for the wires is down." The conductor replied, "I know where it is, I see it." Witness went into her house to get a lantern, and when she came out she saw the conductor dead, lying in the middle of the street, "almost in a line with the trolley poles." *Held*, that it was error, on these facts to direct a verdict for the defendant on the ground of the contributory negligence of deceased and that he was a volunteer.

On error to the Supreme Court.

For the plaintiff in error, *Samuel Kalisch.*

For the defendant in error, *Lefferts S. Hoffman* and *Leonard J. Tynan.*

The opinion of the court was delivered by

VROOM, J.   This is an action that was brought to recover damages arising from the death of John W. Martin, alleged to have been caused by the negligence of the defendant.

Martin was in the employ of the defendant as a conductor of a trolley car running between Lyons Farms and El Mora, in the city of Elizabeth, on which route three cars operate. On the evening of September 17th, 1903, Martin's car had left Lyons Farms and was proceeding south on Broad street, Elizabeth, on its way to El Mora.

It was a dark evening and there had been on that day a severe storm, with high winds. The violence of the storm had subsided at the time of the accident by which Martin came to his death. Of the fatal occurrence itself there was no witness. The nearest approach to direct testimony was that of a Mrs. Hutchinson, an acquaintance of Martin, whose house stood some twenty feet back from the street and just opposite the place where Martin's death occurred. Mrs. Hutchinson's testimony was that while in the back part of her home, at about seven o'clock in the evening, her attention was arrested by a flash of light in the street, and that upon going to the front of the house she saw that a southbound trolley had just passed. This car went on towards Elizabeth. Witness then observed a wire, partly in the air, and "quite a few feet of it on the ground," where it was, as she expressed it, "alight." While she thus stood a car coming from Elizabeth passed her house on the northbound track, and upon its return towards Elizabeth she tried to stop it, at first by whistling and afterwards by calling out. She was not successful in stopping the car, which, in passing the place where the wires were down, emitted a great light and afterwards stopped, and some one

got off and started to walk back. To this person, who was Martin, Mrs. Hutchinson called out, "For God's sake don't come any closer, for the wires is down," to which Martin replied, "I know where it is, Mrs. Hutchinson, I see it." The witness went into the house to fetch a lantern, and upon returning with it saw the body of Martin lying in the middle of the street, "almost in a line with the trolley poles." He was already dead.

In addition to the warning given to Martin by Mrs. Hutchinson, there was also testimony that the motorman, who had been himself severely shocked, advised Martin against going back on foot, suggesting that it would be safer to run the car back.

There was further direct testimony as to the wire that was on the ground emitting sparks, and there was also testimony of another wire or the other end of the same wire, that hung over the southbound track and reached to within four or five feet of the ground. There was considerable testimony as to the number of wires maintained at that point by the defendant and others and as to their nature and location.

Upon this testimony, amplified only as to details, the trial court, at the conclusion of the whole case, directed a verdict against the plaintiff without regard to the question of the defendant's negligence, solely upon the ground that the deceased was guilty of contributory negligence and had voluntarily assumed the danger of an obvious risk that was not within his employment as a servant of the trolley company.

If this ruling is to be justified, it must be upon the assumption that the only inference of which the testimony is susceptible was that Martin was killed by his voluntarily or incautiously coming in contact with the wire that Mrs. Hutchinson saw emitting sparks, and of which she warned him, and which he said he saw. The inference, however, that was most favorable to the plaintiff, and which both the trial court and this court must assume, is that Martin's death was caused by his coming in contact with the wire that was emitting no sparks and giving in the darkness no indication of its presence, since it formed no circuit by touching the ground, which it

lacked four or five feet of reaching. The normal presumption against negligence also forbids the adoption, upon a demurrer to evidence, of the alternative inference that the deceased was rashly incautious or walked deliberately upon a wire that he saw to be incandescent. The question of the obviousness of the danger that the deceased actually encountered, and the question of his contributory negligence, were alike for the jury, unless the trial judge was right in his conclusive finding that the deceased was at the place in question as a mere volunteer, and not as an employe of the defendant acting, or reasonably supposing that he was acting, within any duty that he owed to his employer. We think that the judicial disposition of this question was erroneous, and that the determination of it was either not for the court at all, or, if it was, that it was wrongly decided. In absence of any evidence as to what the company by its rules exacted of its employes, we are relegated to the general duties that inhere in the relation of master and servant, one of which normally is that of conserving the master's property, at least to the extent of reporting to him, with reasonable certainty and promptitude, any unusual occurrence by which his property or interests are greatly endangered.

The situation with which, in the present case, the servant was suddenly confronted, was one in which not only the property and equipment of the master were threatened with injury or destruction, but by which its traffic was in danger of being seriously interfered with, and the lives of its passengers greatly imperiled. To report to the master the existence of such a condition would seem to lie within the duty of any servant who was in the least degree careful of his master's interests.

To ascertain to some extent the existing state of affairs, in order that such report might be reasonably useful and tend to the prompt correction of the trouble, is so closely connected with such primary duty that it cannot be said, at least not conclusively and as a matter of law, to be clearly outside of the scope of the duty owed by such servant to his employer. If, for instance, in the present case, Martin, after ascertaining that the wires were down, had made a report to that effect to

the proper official of the company, by reason of which the danger with which its property and traffic was threatened, was promptly averted, would anyone be willing to say that in making such a report he was intermeddling with matters that did not at all concern him? If this be true of the service Martin might or would have rendered had he lived, the fact that he met his death in attempting to do it cannot alter the essential character of the service. If, therefore, Martin was not guilty of contributory negligence, and if he did not assume or rashly incur a risk that was or that should have been obvious to him—and these were jury questions—the verdict should not have been directed upon the ground that in any event he was acting as a mere volunteer in a matter not within the scope of any duty that he owed to the defendant.

We conclude, therefore, that the direction of a verdict upon the ground on which it was placed by the trial court was erroneous. This conclusion, of course, does not prevent the defendant in error from sustaining such direction upon some other ground, and this it has attempted to do upon the ground that there was no testimony from which a jury should be permitted to find that the death of the plaintiff's decedent was due to the failure of the defendant to exercise reasonable care in respect to its system and equipment. Without rehearsing the testimony bearing upon this contention, it is sufficient to say that we think that upon the evidence upon this point there was a jury question under the decisions of our courts in the cases of *New York and New Jersey Tel. Co.* v. *Bennett,* 33 *Vroom* 742; *Hamilton* v. *Bordentown Electric, &c., Co.,* 39 *Id.* 85; *Burns* v. *Delaware and Atlantic Telegraph and Telephone Co.,* 41 *Id.* 745, and cases there cited.

The judgment entered in the Supreme Court on the directed verdict is reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Voorhees, Minturn, Bogert, Vredenburgh, Vroom, Congdon, JJ.  13.