## DETERMINED BY

# THE SUPREME COURT

### OF THE

## STATE OF WYOMING

[April Term, 1921]

### LEMOS v. MADDEN, ET AL.
(No. 964; Decided September 9, 1921, 200 Pac. 791)

PLEADINGS—DEMURRER — ASSUMPTION OF RISK — DAMAGES — PROXIMATE CAUSE—MASTER AND SERVANT.

1. A petition in an action by a sheepherder against his employers and their camp mover, alleging injuries sustained from exposure to cold in a severe storm due to defendant's negligence and failure to supply plaintiff with proper clothing, fuel and assistance while caring for a band of his employer's sheep and that the camp mover was incompetent and unreliable in the performance of his duties, a fact of which his employers had knowledge, is not demurrable on the ground that the alleged injuries were caused by the negligence of the camp mover, a fellow servant, no separate demurrer being filed as to other defendants.

2. In an action by a sheepherder against his employers and one employed as their campmover, allegations of the petition that plaintiff suffered injuries as a result of defendant's violation of a duty imposed by a long established custom and usage in the business of ranging sheep, to supply the herder with clothing, fuel and assistance in

handling and caring for sheep in his charge, are not demurrable as averments of a legal conclusion.

3. The law does not charge a person with all of the possible consequences of a wrongful act. It ignores remote causes and looks only to the proximate cause.

4. The proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred.

5. Where the question of proximate cause arises on demurrer to the petition in an action for damages for bodily injuries the facts being undisputed and susceptible of but one inference, the appellate court must declare whether the cause is remote or proximate.

6. Plaintiff, in a suit for damages, alleged that defendants, in violation of their duty, neglected to furnish him with fuel and protection at a camp where he was in charge of defendants' sheep during a severe winter storm; that while protecting himself from cold the sheep wandered away from the camp during the night; on the following morning he left the camp to search for them; that in gathering the stray sheep during the storm that continued throughout that day and night he suffered bodily injuries of a serious and permanent character from exposure and cold, held on demurrer to the petition, that defendants' failure to furnish plaintiff fuel and protection at the camp was not the proximate cause of his injuries.

7. In an action for damages, plaintiff alleged that he suffered serious and permanent bodily injuries from cold and exposure while rescuing a band of defendants' sheep that had drifted away from his camp at night during a severe winter storm; that he left his camp in the storm to gather the sheep, fully relying upon defendants coming to his aid as it was their duty to do under the circumstances, held on demurrer to the petition sufficient to authorize submission of the facts to a jury upon the question of the proximate cause of plaintiff's injuries.

8. A petition in an action for damages for bodily injuries alleged to have been incurred by plaintiff from cold and exposure to a winter storm while rescuing defendants' sheep that had drifted away and were in danger of loss, also alleging that plaintiff in leaving his camp to pursue the straying sheep did so in reliance upon a promise from

defendants of help and protection on the range in case of storms, held not demurrable upon the theory that plaintiff assumed the risk of injury while performing the regular duties of his employment, and that the question should be left to the jury under the rule and limitations applied in such cases.

ERROR to the District Court, Fremont County, HON. CHAS. E. WINTER, Judge.

Action by Chas. J. Lemos against William Madden, James M. Graham and Hugh Murray, to recover damages for bodily injuries incurred from cold and exposure while caring for defendants' sheep, it being alleged by plaintiff that the negligence and failure of defendants to supply him with fuel and assistance at the camp and on the range while at work with the sheep was the proximate cause of his injuries. Other material facts are stated in the opinion.

*M. C. Burke* and *Ray E. Lee,* for plaintiff in error.

The only question raised by the general demurrer to the petition is whether the petition states a cause of action; this question however, involved the subordinate question, 1, the duty of the master to use due care to protect his servant, 2, assumption of risk, and 3, contributory negligence. The master is liable for accidents occurring in the course of the employment not induced by carelessness or improper conduct of the employee. The master must use ordinary care to prevent injury to his servant unless the risk be assumed or there be contributory negligence. The petition alleged facts on this branch of the case sufficient to constitute a cause of action. Assumption of risk presupposes that the master has performed his duty. (Slack v. Hinres, 65 N. E. 669.) It does not include risk arising from negligence of the master nor unreasonable nor extraordinary risks or perils. (Sinclair Co. v. Waddell, 65 N. E. 437.) It does not apply where the master is negligent in furnishing suitable instrumentalities. (Boucher v. Robsen Mills, 65 N. E. 819.) The servant is chargeable with ordinary care. (29 Cyc. 528.) He is not required to aban-

don his post at the first appearance of danger. Contributory negligence is not imputed by acts performed in the usual manner. (29 Cyc. 516.) Injuries resulting from wanton, reckless or wilful conduct to servant by master not excusable ·under the doctrine of contributory negligence.· It is the duty of the servant to protect his master's property that is in jeopardy. (Hollenbeck v. Engineering Corps, 129 Pac. 1058; Martin v. North·Jersey R. Co., 80 Atl. 477; Terre Haute & I. R. R. Co. v. Fowler, 56 N. E. 228.) Acts performed in emergency not governed by ordinary rúles of negligence, (26 Cyc. 1274, ·R. R. Co. v. Rogers, 203 Fed. 462; Melkisson v. Fuel Co., 155 Pac. 727; Nelson v. R. R. Co., 148 Pac. 388; R. Co. v. Morgan, 171 S. W. 1187.) The proximate cause of the injury was the failure of the master to provide fuel at the camp. (Lilly v. New York Central R. R. Co., 14 N. Y. 503.) Servants who are faithful and diligent in protecting a master's prop-· erty are entitled to protection. (Penn. v. McCaffery, 38 N. E. 671; Malby v. Belden, 45 N. Y. App. Div. 384; Ill. Cent. Ry. Co. v. Smith, 85 S. W. 1173; Fisher v. Ry. Co., 2 L. R. A. N. S. 954.) The petition shows employer's failure to provide common necessities of protection; injury to plaintiff due to negligence of defendant; injury incurred in the line of duty during an emergency; plaintiff's reliance upon defendants doing their duty; that plaintiff was performing his duty at the time of the injury. The trial court erred in sustaining the demurrer.

*Dillon & Kimball,* for defendants in error.

The petition fails to state a cause of action. The allegation of duty is a mere conclusion of law. (Marvin Co. v. Ward, 46 N. J. L. 19; Brown v. Mallett, 5 C. B. 599; Nickerson v. Bridgeport Co., 46 Conn. 24; Tower v. Providence Co., 2 R. I. 404.) A demurrer does not admit allegations constituting mere conclusions of law. (Thomas Kind v. Street Ry. Co., John Morrison v. Street Railway Co., 23 R. I. 583, 70 L. R. A. 924.) The acts of negligence alleged could not be the proximate cause of the injuries. (29 Cyc.

488. Tremelling v. So. Pac. Co., 170 Pac. 80.) The master is not liable for injuries caused by negligence of a fellow servant. (26 Cyc. 1276.) It is alleged that the proximate cause of the injuries was failure of the master to provide sufficient fuel in the camp, but it is also alleged that plaintiff left the camp on a certain morning and remained away during that day and night during which time he was injured by exposure to storm and cold, hence the absence of fuel at the camp could not have prevented the alleged injuries which according to the petition itself were the result of voluntary exposure to extremely cold and stormy weather on the part of plaintiff himself.

*M. G. Burke* and *Ray E. Lee,* in reply.

The petition alleges that plaintiff's employer agreed to supply him with fuel and clothing, and having failed to do so it was necessary for him to wrap himself in the bed clothing to keep from freezing during the night that his sheep strayed from camp. This necessitated his going out in the storm to gather them the following day, a task of such great difficulty that he was unable to get back to the camp that night. It was alleged that this could have been avoided had the camp mover attended to his duty. Where the servant is injured in attempting to save his master's property, contributory negligence will not be attributed to him. (Prophet v. Kemper, 95 Mo. App. 219; Maltby v. Belden, 45 N. Y. App. Div. 382; R. R. Co. v. Smith, 51 S. W. 506.) Left alone with sheep in a severe storm plaintiff sought to protect his 'employer's property in an emergency, and in doing so was frozen and injured. His employer failed to perform his contract, in supplying fuel, clothing and help. This states a cause of action. (Schumaker v. R. R. Co., 12 L. R. A. 257; Hyatt v. R. R. Co. 19 Mo. App. 287; Clifford v. R. R. Co., 12 Pac. 219.) Plaintiff would have incurred a penalty had he deserted the sheep. (Laws 1919, c. 49.)

Blume, Justice.

For the sake of brevity, the plaintiff in error will be referred to as plaintiff or appellant, and the defendants in error as defendants or appellees.

The appellant, plaintiff below, a demurrer to the óriginal petition by him filed having been sustained, filed an amended petition alleging in substance: That defendants Madden and Graham were owners of a band of sheep, located near Moneta, Fremont County, defendant Murray being in charge of the sheep as camp mover and agent. That on Nov. 4, 1916, Murray, as such agent hired plaintiff to take charge of the sheep as herder; that it is the duty of a camp mover to provide fuel for the herder at his camp, sufficient to protect from the cold and to cook meals, and to see that all provisions and things necessary for the comforts and protection of the herder are furnished; that the duty of the owners is to provide a competent camp mover and to see that the herder provides the things above mentioned; that it is the further duty of the camp mover to visit the sheep camp once in every three or four days, and see that everything for the comfort and safety of the herder is provided; that in case of storm, he must immediately go to the sheep camp to render such assistance as may be necessary to the herder and see that the herder is provided for and protected, and that the sheep are cared for; that the duties mentioned were the duties of the owners and camp mover respectively, in this case; that defendants well knew that plaintiff himself could not furnish the things mentioned; that all said duties are well established by custom of long usage in the business of raising sheep on the range of Wyoming and other states; that on Nov. 10, 1916, a severe storm arose and the weather became severely cold; that plaintiff was compelled to herd his flock at night to keep them from straying away and becoming lost; that defendants had wholly failed to provide the necessary fuel; that all the fuel available was used up in the early part of the night; that plaintiff became so overcome with cold and the effects

of the storm, and having no fuel with which to keep up the fire, was compelled to go to bed to keep from freezing, and his flock strayed away before morning; that the following morning the storm was still raging and the weather severely cold; and no fuel at the camp to cook breakfast; that plaintiff started after his flock, relying on defendants coming to his aid as he had a right to expect and it was their duty to do; that it was late in the day before he got his flock gathered and he was unable to get back to his camp that night, but was compelled to stay out all night and only reached help late the day following when he found the camp of one Evans; that plaintiff's feet were severely frozen; that he was helped by Evans and taken to Shoshoni for treatment; that during this time Murray was drunk at Shoshoni; that plaintiff acted with care; that his injuries were sustained by the careless, wilful and negligent acts of defendants; that he is 51 years of age, and can never permanently recover from his injuries; that said Murray had had a habit for years of getting drunk and neglecting his duties to the knowledge of said owners, but of which plaintiff did not know. He asks damages of $10,000.

A demurrer to the amended petition on the ground that it failed to state facts sufficient to constitute a cause of action was sustained; and plaintiff standing on said amended petition, judgment was entered for defendants. The case is here on petition in error.

1. Appellees cannot rely upon the fact that the injury was inflicted by the negligence of a fellow servant, for the reason that the fellow servant is himself made a party, and no separate demurrer was filed for the other defendants (31 Cyc. p. 332); because, further, it is alleged in the petition that the fellow servant was incompetent, to the knowledge of the other defendants, plaintiff not having any knowledge thereof; and because many of the duties to be performed are alleged to be those belonging to the master and of the nature which cannot be delegated.

2. Plaintiff pleaded that the defendants failed to provide him with proper fuel and protection at the place where he worked, and counsel for appellees contend that the pleading is insufficient, for the reason that merely to plead a duty is a legal conclusion. The duty of defendant, it is true, must be shown by a statement of the facts from which the duty follows as a matter of law. A more general allegation of the existence of the duty is insufficient and such general averment is a conclusion of law. (29 Cyc. 567.) And it is also true that the furnishing of food, clothing, fuel, and other provisions for physical wants devolve in general upon the servant, unless there is some custom, rule or understanding to the contrary. (King v. R. R. Co., 23 R. I. 583, 70 L. R. A. 924.) In this case, after pleading the duties, the amended petition further states: "That all of the duties aforesaid which are required of the camp mover, and of the owners toward the herder of sheep are well established by custom of long usage in the business of raising sheep on the range in Wyoming and other states." The custom seems to be sufficiently pleaded. (17 C. J. 518.) This statement, not found in the original petition, clearly brought the amended petition within the rule laid down in the King case, supra, and appears to us to be sufficient to meet the objections made.

3. Counsel for the appellees argue the case on the theory that the amended petition charges negligence only in not furnishing fuel at the camp, and charges no negligence in the performance of duties outside the camp; that is to say, on the range, where plaintiff was injured. They were justified in doing so, according to the original brief of appellant filed herein, for therein it is stated that "the proximate cause of the injury was the failure of the master to provide sufficient fuel in the camp." In view of the fact that it must be decided, in any event, what bearing, if any, the negligence charged in not furnishing fuel and other protection, if any, at the camp, has upon the case, we will for the

present proceed upon the general theory adopted by counsel for appellees.

Proceeding then upon that theory, the steps in this case from the alleged act of negligence to the injury are as follows: (1) The alleged negligence in not furnishing to the plaintiff fuel and comforts at the camp; (2) the intervening storm; (3) the plaintiff going to bed; (4) the straying away of the sheep from the camp; (5) the plaintiff facing the storm, and (6) the injury caused by the cold and storm. The question is, as to whether the first step above mentioned is the cause of the sixth step, the injury. Counsel on neither side have cited, to sustain the theory on which we are now proceeding, any cases parallel to this case, and after a most painstaking search, we have been unable to find any. We must accordingly content ourselves in referring to general principles, and to cases illustrative thereof, even though the facts therein involved are different from the facts in the case at bar. It is seldom that an effect has but one cause, if we construe the word "cause" broadly. A number of antecedent events usually combine to produce a certain effect. Small faults are often the occasion of serious consequences; and if we pursued the strict path of logic, we should hold him who in any way contributes to a loss responsible for all that follows in consequence of his acts. But such a rule would often work great hardship. Considering, therefore, the shortcomings of human beings, the law does not charge a person with all the possible consequences of a wrongful act, ignores remote causes, and looks only to the proximate causes. (Fleming v. Beck, 48 Pa. St. 309; Morrison v. Davis & Co., 20 Pa. St. 171; 57 Am. Dec. 695; Smith v. Tel. Co., 83 Ky. 104, 4 A. S. R. 126.) "A man's responsibility for his negligence, and that of his servants must end somewhere. There is a possibility of carrying an admitted correct principle too far. It may be extended so as to reach the *reductio ad absurdum,* so far as it applies to the practical business of life." (Hoag & Alger v. R. Co., 85 Pa. St. 293; 27 Am. Rep. 653; Sharp

v. Powell, 7 Com. P. 253; Fleming v. Beck, 48 Pa. 309; Squire v. U. T. Co., 98 Mass. 232, 90 A. D. 157.) Hence Lord Bacon's maxim, that only the proximate and not the remote cause will be sought, has been more or less strictly applied by all the courts. The proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. (22 R. C. L. 110.) But the proximate cause is not necessarily the nearest in point of time or place to the injury. (22 R. C. L. 115.) Without deciding at this time as to the extent that, to constitute proximate cause, it is necessary that an injury should be able to be foreseen (see 22 R. C. L. 120-125) we may quote from Stone v. R. R. Co., 171 Mass. 536, 51 N. E. 1, where the court said:

"According to the usual experience of mankind, ought this result to have been apprehended? The question is not whether it was a possible consequence, but whether it was probable, that is, likely to occur, according to the usual experience of mankind. That this is the true test of responsibility applicable to a case like this has been held in very many cases, according to which a wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience." (See also Ry. Co. v. Trich, 117 Pa. St. 390, 11 Atl. 627.)

Again, it is said that the efficient cause is the cause that necessarily sets the other causes in operation. (Ins. Co. v. Boon, 95 U. S. 117; 24 L. Ed. 395; Mallen v. Waldowski, 203 Ill. 37; 67 N. E. 409; Hawthorne v. Siegel, 88 Cal. 159, 25 Pac. 1114; 22 R. C. L. 111.) Proximate cause is probable cause, and remote cause is improbable cause. (Thompson. Neg. § 50.) While these principles of law have been reasonably uniformly laid down by the courts, great difficulty has been encountered in applying them. There is no definite line between those results which naturally and

probably follow an act or omission, and those which do not; no definite boundary is set to mark off remote causes from those which are proximate; the degree of probability rises by almost imperceptible gradations. This fact has been recognized by courts and frequently commented on. (22 R. C. L. 115, Blackburn, J., in Hobbs v. Ry. Co., 10 L. R. 111, (Q. B.) said: "It is a vague rule * * * it is something like having to draw a line between night and day; there is a great duration of twilight when it is neither night nor day." It is, therefore, not surprising that courts have recognized that each case must be decided upon its own facts, and that there has been such diversity in the decisions upon similar or like facts. (Ins. Co. v. Tweed, 7 Wall. 44, 52, 19 L. Ed. 65.) This diversity is, for instance, very marked in five cases: (22 R. C. L. 158-161); in cases where horses are frightened: (R. C. L. 198, 199); in elevator cases: (Claypool v. Wigmore, 34 Ind. App. 35, 71 N. E. 509; Cole v. Sav. & L. Soc. 124 Fed. 113, 63 L. R. A. 416; Colorado, etc., Co. v. Rees, 21 Colo. 435, 42 Pac. 42; Taussey v. Roberts, 114 N. Y. 312, 21 N. E. 399, 11 Am. St. Rep. 655.) and in cases of delay by carrier, (22 R. C. L. 188, 189.) The main differences have arisen because in some cases courts have followed certain premises to a strict logical conclusion, while in others they have attached greater weight to the laws of probability and improbability. The controversy commenced, in English jurisprudence, with the famous Squib case, in which Justice William Blackstone dissented, has continued unabated ever since and will continue till rigid rules, circumscribing definite sets of facts, will gradually cause the ultimate principle to fade from memory and remain in being only in the records deposited in the dusty tombs of the past.

Courts have tried to find more definite tests of what constitutes a proximate cause than that given above, but have illy succeeded. It has often been argued, that if no loss or injury would have occurred except only by reason of the existence of the cause alleged, then that cause should be

held as the responsible cause. Here strict logic is attempted to be applied, and responsibility fastened upon an act or omission for all that follows in its train. But the argument has been rejected by the courts. Of course, if an injury would have happened in any event as a result of the act or omission, no matter what might have intervened, responsibility follows. But if the original wrong furnished only the condition or occasion, then it is the remote and not the proximate cause, notwithstanding the fact that there would have been no loss or injury but for such condition or occasion. Statements to the contrary are sometimes found in cases, but these are inaccurate and misleading. (Bailey, Personal Injuries, § 46.) It is this principle, more than any other, that counsel for the appellant have gradually overlooked. They argue that the injury would not have happened except for the negligence alleged, and that, therefore, liability follows as a matter of course. But that is not true. There must be a causal connection, and that must be from proximate cause, as that has been defined by the courts, and not from remote cause, to injury. We would have to abandon entirely the doctrine of proximate, probable cause, if we conceded the broad position of counsel. A cause may, in law, be considered a remote cause, notwithstanding the fact that no injury would have occurred, if it had not happened. (R. Co. v. State, 33 Md. 542; Claypool v. Wigmore, supra; Ry. Co. v. Bigham, supra; Ry. Co. v. Columbia, 65 Kan. 390, 69 Pac. 338; Hoadley v. Transportation Co., 115 Mass. 304, 15 Am. Rep. 106; Dubuque W. & C. Ass'n. v. Dubuque, 30 Ia. 176; Hayes v. Cooley, 13 N. D. 204, 100 N. W. 250; 29 Cyc. 496.) Thus in the case of Ry. Co. v. Ins. Co., 139 U. S. 223, 11 Sup. Ct. 554; 35 L. Ed. 154, the carrier had delayed furnishing transportation for some cotton which was piled up at the station houses, and while it was there, it was burned. The court said:

"The delay of the defendant railway company to furnish transportation according to its contract with the compress

company was in no legal sense a cause of the destruction of the cotton. It was simply one of a series of antecedent events without which the loss could not have happened, for if the cotton had not been there, it would not have burned. The cause of the loss was the fire, kindled by some unknown means, and in no way arising from or connected with the neglect of the defendant to furnish transportation."

In the case of Jones v. Jones, 58 Ark. 157, 23 S. W. 1099, defendant failed to gin cotton at the time agreed on, and during the delay the cotton burned. The court said:

"True, we might say, if the cotton had been ginned on Monday, and carried away on Tuesday, it would not have been burned on Thursday. To use language similar to that employed by Justice Battle in the case of Martin v. Ry. Co., 55 Ark. 521, the failure to gin on Monday was one of a series of antecedent events without which the loss would not have occurred, but such failure was in no sense the proximate cause of the loss."

Again, we may look at the question from another angle: What is the situation, if the act or omission had been left undisturbed by other factors, and would not have produced any injury or loss except for the intervention of other agencies? Of course, if such other factors would have produced the injury in any event, no liability for the original act or omission exists; but excepting such case, the test is not conclusive. It is said in 29 Cyc. 496, that "if no danger existed in the condition except because of the independent cause, such condition was not the proximate cause." The statement, at first blush, would seem to dispose of the case at bar, because it is apparent that had the plaintiff staid in bed until the storm and cold had passed, the injury probably would not have happened. The principle is illustrated in Strojney v. Wheel Co., 116 Ill. App. 550, where the negligence charged was that congealed metal had negligently been permitted on tubs, which later, in being knocked off, hit plaintiff. Said the court:

"There was no immediate causal connection between the

accumulation of metal and the happening of the injury, but the act of the molder in knocking off the metal; and this was a new and independent force that broke the causal connection. From the mere fact of accumulation it did not necessarily or absolutely follow that the metal would be removed from the tubs; it might and it might not.''

In Goodlander Mill Co. v. Standard Oil Co., 63 Fed. 400, 11 C. C. A. 253; 27 L. R. A. 583, defendant in shipping petroleum, negligently left off a valve to regulate the flow of oil, causing the car to leak to the knowledge of the consignee, who attempted to draw off the oil near plaintiff's mill. The oil ran off so rapidly that it flowed into the plaintiff's engine room, exploded and destroyed the mill. The court said:

''Here the gas company gave the negligent act a mischievous direction. If but for such interposition the defendant's negligence would have produced no injury, the usual connection is broken, because the intervening act made the act of negligence, otherwise innocuous, operative to injury.''

(See also Lehman v. Logging Co., 108 Wash. 319, 184 Pac. 323; Sharp v. Powell, supra; Fowlkes v. R. Co., 96 Va. 742, 32 S. E. 464; Simon v. Tel. Co., 97 Kans. 42, 154 Pac. 242.)

But that this principle cannot control in all cases is clear when we turn to another class of cases, of which Cleveland etc. Ry. Co. v. Clark, 51 Ind. App. 392 furnishes an illustration. There a railroad crossing was left in bad repair, and decedent, in crossing it with his team, was delayed and hindered by that condition, so that he was run over by the engine of an independent contractor operated on the railroad tracks which were laid over the crossing. The court held, and we think rightly, that it was for the jury to say whether the defective condition of the crossing was a proximate cause of the injury, although it concurred with the negligence of the independent contractor. Still, it is clear, that no danger existed in the defective crossing except be-

cause of an independent factor—the contractor running his engine over it.   Hence, while the principle last stated may well be applied as one of the tests of liability, it cannot serve as an ultimate, conclusive one.   The true test is embodied in Eberhardt v. Tel. Ass'n., 91 Kans. 763, 139 Pac. 416, where the court said:

"The question of proximate cause is one frequently so near the border line as to cause much perplexity, but generally speaking, it may be said in this state that the proximate is the producing cause; not the one supplying the condition, but the one producing the injury.   The one supplying the condition may be intrinsically careless as to amount practically to a continuing invitation, so to speak, for a direct cause to join in producing the disastrous result. But to be such it must present a condition of danger so manifest that the one responsible must be held to have been negligent in furnishing the means for probable injury.   But a condition which could not reasonably be expected to endanger and which but for some independent cause without which the injury would not have occurred would not have endangered, does not ordinarily amount to a proximate cause."

Now let us look more closely at such other factors above mentioned; that is to say, factors other than the alleged cause, considering them, as it were, from a positive standpoint, for in the case at bar the injury complained of was not caused directly by the failure of fuel and protection at the camp.   The immediate cause thereof was the storm and cold to which plaintiff was exposed.   We have often a valuable criterion of proximate cause where such other factors are presented in a case.   (Ins. Co. v. Tweed, supra; McRae v. Hill, 126 Ill. App. 349.)   We have here the doctrine of intervening agency, never applicable except when the intervention takes place subsequent in time to the commencement of the alleged cause of injury or loss, the term "intervening" meaning "coming between."   We have used the phrase "commencement of the alleged cause of injury

or loss'' advisedly, for, as stated before, it has sometimes been argued, that if the original negligence, or the effect of it, still exists at the time of the injury, then that the original negligence is necessarily a ''concurrent cause,'' and hence one of the efficient proximate causes. But, as shown before, that does not necessarily follow. A cause concurrent with another cause must, of course, to be considered an efficient cause, operate contemporaneously or substantially contemporaneously, with that other cause, no matter at what time each respectively arose, since there must be a causal connection between an act of negligence and an injury. It is also true, that frequently, at least, the term ''concurrent cause'' has, in legal terminology, come to mean or imply, perhaps unfortunately, that it is an efficient cause, as is shown, for instance, by the phraseology used in Johnson v. Tel. Exch. Co., 48 Minn. 433, 51 N. W. 225; Pittman v. R. R. Co., 231 Ill. 581, 83 N. E. 431; Seith v. Electric Co., 241 Ill. 252, 89 N. E. 425, 24 L. R. A. N. S. 978; Welch v. Tract Co., 154 Mich. 399, 117 N. W. 898; Ry. Co. v. Pritz, 1 Ohio App. 119. Strictly speaking, however, no such meaning is attached to the term. As was said for instance in Cole v. Sav. & L. Co., supra, in Thurbran v. Drave Co., 238 Pa. 443, 86 Atl. 292, and in Stone v. R. R. Co., 171 Mass. 536, 51 N. E. 1, the mere fact that one cause may in point of time ''concur with,'' that is, ''operate along with'' another, does not necessarily show that it is an efficient cause. A cause, though concuring in point of time, though it, or the effect of it, may still exist, yet, legally speaking, may be considered a remote cause. This is clearly illustrated in Ry. Co. v. Ins. Co., and other causes cited supra. Hence it is futile to distinguish between an intervening cause and a concurrent cause. In a sense, at least, an intervening cause will always be a concurrent cause, assuming that it has any connection with the injury at all. But the point is, what is its efficiency? The intervening agency may be of such nature and character, as not to be considered a producing cause at all, and hence re-

mote in the chain of causation; again, it may rise to the dignity of an efficient concurrent cause, and still leave the original cause as one of the proximate causes; and again, it may be of such force, nature and character, that it, legally speaking, entirely supercedes the original act or omission, so as to become alone the proximate cause of the injury or loss, and in such case the original act or omission becomes only the condition, or occasion of the injury, and hence remote in the chain of causation. Only when we can say that the intervening agency belongs to the last of this classification, can we say that the liability, otherwise, arising from the original act or omission, is extinguished, and that the latter ceases to be the proximate cause. (Fent v. Ry. Co., 59 Ill. 349, 14 Am. Rep. 13; Cole v. Sav. & L. Soc., supra; Wehner v. Lagerfort, 27 Tex. Civ. App. 520, 66 S. W. 221; Goodbey v. E. & H. Co. (Ia.) 181 N. W. 498.) The new intervening cause must be independent of the original wrong, and must be adequate to produce the injury, so interrupting the natural sequence of events, so as to produce a result different from what would have been produced, and one that could not have been reasonably anticipated. (22 R. C. L. 133.) If an injury might reasonably be anticipated from the original negligent act or omission, notwithstanding the intervention of an independent agency, the act of such independent agency will not constitute a defense, for it will not be regarded as cutting off the line of causation, and the party guilty of the original act or omission will be held responsible. (Claypool v. Wigmore, supra; Seale v. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602; Ry. Co. v. Bigham, supra.) The intervening agency may be animate or inanimate, accidental or intentional. Illustrative generally of efficient intervening agencies are Hoag & Alger v. R. R. Co., supra; Mayor v. Dykes, 103 Ga. 847, 31 S. E. 443; Ry. Co. v. Ware, 67 Tex. 63, 4 S. W. 13; Cavanaugh v. Coal Company, 131 Ia. 700, 109 N. W. 503; R. Co. v. Gelvin, 238 Fed. 14, 151 C. C. A. 90; R. R. Co. v. Coker, 81 Ill. App. 665, and compare with it Paul v. R. R.

Co., 170 N. C. 230, 87 S. E. 66; Ry. Co. v. Columbia, supra; Ry. Co. v. Bigham, supra; Ry. Co. v. Trich, supra; but we cannot pause to quote from them. The cases of Schumaker v. Ry. Co., Clifford v. Ry. Co., and Hyatt v. Ry. Co., hereinafter referred to, and cited by counsel for appellant, have no bearing on the point now under consideratoin, for the reason that the cold in those cases was not an intervening agency.

One of the intervening agencies in the case at bar, as appears from the pleadings, was the storm. There are, however, also general allegations that the negligence of the defendants caused the injury in question. Where that is the case, then unless it appears clearly that the intervening agency is the proximate cause, the general averments control as against a demurrer. (Cleveland etc., Ry. Co. v. Clark, supra.) Plaintiff was not required to anticipate or negative any defense that might be urged as to an intervening agency. (Fay v. Cox (Cal. App.) 188 Pac. 623.) The allegations in the amended petition are not such that the court can say as a matter of law that the storm mentioned was such an intervening agent as to become the supervening, efficient cause of the injury, and that, too, may be said of the straying away of the sheep.

We arrive, then, at the question, what effect the conduct of the plaintiff has in determining what was the proximate cause of the injury in question. It was said in The Santa Rita, 176 Fed. 890, 100 C. C. A. 360; 30 L. R. A. N. S. 1210:

"One of the most valuable tests to apply to determine whether a negligent act is the proximate or remote cause of an injury, is to determine whether a responsible human agency has intervened between the fact accomplished and its alleged cause."

Such responsible human agency may be a stranger or the plaintiff himself. And to hold that the acts of the plaintiff constitute an intervening agency, superceding the original negligence, it is not necessary to hold that the plaintiff was guilty of contributory negligence. (Chattanooga Light etc.

Co. v. Hodges, 109 Tenn. 331; 70 S. W. 616, 60 L. R. A. 459; Cavanaugh v. Coal Co., supra; 22 R. C. L. 142.) Plaintiff, after alleging that a severe storm arose, further says:

"That all of the fuel available was used up in the early part of the night, and that plaintiff became so overcome with cold and the effects of the storm, and having no fuel with which to keep up a fire, was compelled to go to bed to keep from freezing. * * *. That the following morning the storm was still raging and the weather severely cold;" that he found the sheep strayed away, and to save them, he faced the storm and cold.

It does not appear what kind of a "camp" plaintiff had. Presumably, there was a sheep wagon, containing the bed, where plaintiff, as stated by counsel, wrapped "himself in the bed clothing to keep from freezing that night." The severity of the cold, and the storm, commenced on the evening of November 10th and continued unabated when plaintiff faced it next morning. Only by a stretch of imagination could it be said, under the circumstances, as appear by the pleadings, that the plaintiff in facing the storm, was acting under an emergency. The straying away of the sheep during the night does not change that fact. He had, and we have not the slightest doubt, he took, plenty of time for deliberation. Yet, in view of this, he faced, or went into the storm, the severity of which he fully knew, since, to keep from freezing, he went to bed during the night; he feared during that night the very thing that finally happened to him, when he faced or went into the storm and the cold in the open, whereas, from all that appears from the pleadings, he would have been perfectly safe, had he staid at the camp. Defendants were not there to judge the occasion or direct the plaintiff; the latter was a man of mature years, apparently experienced, and while his act of going out was no doubt laudable, yet under the circumstances, it seems illogical to say that this act constituted one of the links in the chain of circumstances set in motion by defendants. He was an intelligent being, and unless acting

under the impulse of the moment, his acts should be judged accordingly.

True, as said by counsel, it was his duty to protect his master's property, if he could reasonably do so without endangering himself. But he had no right, in attempting to do so, to impose a possible ultimate liability upon the master, perhaps many times larger than the property attempted to be saved. While we must fully protect the rights of the most humble as well as the high, we must not lay down a principle having a tendency to protect neither. There must be a limit somewhere, in this class of cases, where the act of a rational human being ceases to be treated as an impulsion and becomes the dominant cause; and the case at bar, we believe, furnishes an apt illustration of the soundness of the position that, uninfluenced by passion, prejudice, or sympathy, courts should consider only proximate and not remote causes.

We are cited by counsel to Hollenback v. Engineering Corps (Mont.) 129 Pac. 1058; Martin v. St. Ry. Co., 81 N. J. L 562, 80 Atl. 477, Ann. Cas. 1912 D, 212; R. Co. v. Fowler, 154 Ind. 682, 56 N. E. 228, 48 L. R. A. 531, and other cases that plaintiff was warranted in saving his master's property. The cases are not in point. We shall, however, later in the course of this opinion refer to several cases which lay down the rule applicable to the facts in this case on that point. But we shall at present confine ourselves to cases dealing directly with proximate causes. It was said in Hill v. Cotton Oil Company, 202 Mo. App. 478, 214 S. W. 419, that courts and text writers draw no distinction between cases where a stranger or a servant or an owner attempt to save property. We believe that the case of Pike v. Ry. Co., 39 Fed. 255, furnishes us, in view of the facts, though the element considered in that case is fire, the principle that should govern in the case at bar. There the deceased went out of her house to put out a fire about 50 rods distant, thus giving, under the circumstances, ample time for reflection. The deceased had, it is true, no special in-

terest in the fire, and the court seems to treat that fact as furnishing evidence of the fact that the deceased did not, and had no occasion, to act under the impulse of a moment. It was held that, as a matter of law to be determined by the court, the voluntary act of deceased was the proximate cause of her death. The court said in part:

"The intervening cause is not the proximate cause, unless the person acted of his own free will. The first cause does not cease to be the proximate cause if such intervening stranger is imbecile, or acts under compulsion, or under a sense of imminent peril; or, in other words, under such circumstances, produced by the first cause, as would give no opportunity for the exercise of free volition on the part of such stranger. Now, to my mind, there is no evidence going to prove that Mrs. Pike's act was not a strictly voluntary one. There is no evidence going to prove that her act was one of compulsion, or that she acted under the fear of imminent peril to herself, or that the circumstances were such as to destroy her power of volition. Each case must be controlled by its own circumstances. Upon the evidence it cannot be doubted that Mrs. Pike had every opportunity to escape. Neither the direction of the wind, nor the proximity of the fire, nor the dryness of the season, upon the plaintiff's own evidence, placed the intestate in peril for the time being. Instead of escaping from the danger, whatever it was, she voluntarily advanced towards it, going a distance of about 50 rods towards it, and into the place where the fire was burning.    *    *    *

The plaintiff's counsel in their argument have cited Page v. Bucksport, 64 Mo. 51; Stickney v. Maidstone, 30 Vt. 738, —as supporting a right of recovery under the facts disclosed in this case. But these cases do not meet the present one. There the plaintiff was in duty bound to act as he did; besides, his act grew immediately out of and was a part of the original act of negligence. The plaintiff in those cases was acting under the immediate force of the first cause. What took place was but a single happening or event, which

was directly and immediately occasioned by the first cause. There was no such element present, as in this case, of a party voluntarily and deliberately putting herself in a dangerous position which did not result directly and immediately from the first cause."

In the case of Chattanooga Light & P. Co. v. Hodges, supra, an employee was unable to make the phone work in a building set on fire. He accordingly went across the street to phone from there. Being unable to do so, he returned to the burning building. The court held that the act of the employee in going from a place of safety into the burning building was a supervening intervening cause, making the original negligence remote, and that the question under the circumstances was one for the court, and not the jury. A like holding, in cases where the danger was apparently not nearly so great, is found in Logan v. Ry. Co., 96 Mo. App. 461, 70 S. W. 734, and Seale v. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602, where a demurrer was sustained to the petition.

It is unnecessary for us to say whether, in a case where the destructive element involved is fire, we would or would not follow R. Co. v. Siler, 229 Ill. 390, 82 N. E. 362, 15 L. R. A. 819, which holds contrary to the three cases last mentioned. In such cases the emergency exists to save property instantly, or it cannot be saved at all. No such condition existed in this case. Where a man negligently sets fire, he might well be held to have contemplated that, inasmuch as in such case property would, unless saved, be destroyed immediately, that men will impulsively, instantly, and under excitement, go to attempt to save it. The destructive element itself is created directly by such act of negligence, and the connection with the injury might well be said to be natural and proximate. In the case at bar the coming into existence of the destructive element was itself an uncertainty, adding an uncertain factor, and, therefore, moving the question of probable cause farther away from the field of probability into that of possibility only; nor, we believe,

was the act of negligence here calculated to create any impulsive action under excitement. There was no natural and continuous sequence from the negligence to the injury; the former was merely passive, not acting and therefore not actionable. (Independent etc. Co. v. Ice Cream Co., 125 N. Y. S. 1106.)

Judging from the pleadings before us, no harm would have come to plaintiff had he not faced the storm in the open. The negligence in not furnishing fuel could at most have produced discomfort, was not in itself productive of injury, was innocuous, in the absence of the combination of the intervening events that were subsequent to the negligence of the plaintiffs, and while, as before stated, that is not the sole determining criterion, it is at least one, in deciding as to whether the intervening agency or agencies should be considered supervening so as to alone become the proximate cause. In the language of the Supreme Court of the United States, the original negligence did not ''necessarily set in motion'', the subsequent events. The destructive agency was not and could not be; it induced the method of meeting it, however, but to say that it also induced, and necessarily set in motion the movement of plaintiff, who after time for deliberation, was fully aware of the situation, to face the storm and cold in the open would, in our judgment, not be true. While, on the one hand, it might reasonably be anticipated that plaintiff would make an effort to save the sheep, so on the other, the defendants had the right to rely on the existence in plaintiff of the stronger instinct of self-preservation. And the deliberate act of plaintiff, or at least that deliberate act in conjunction with the other intervening agencies, was, as a matter of law, in our opinion, if it be true that the duty of defendant related only to furnishing fuel and protection at the camp, the proximate cause of the injury to plaintiff; and the failure to furnish fuel and protection at the camp cannot under any theory of this case be regarded as such, since it was only the occasion or condition thereof. Where

the question of proximate cause arises on demurrer to the petition, and the facts are undisputed and susceptible of but one inference, as in the case at bar, the court must declare whether the cause is remote or proximate. (Kelson v. Service Co., (N. J.) 110 Atl. 919; Moody v. Refining Co., 142 Tenn. 280, 218 S. W. 817; Norris v. Ross, 98 Kan. 395, 161 Pac. 582; Cole v. Sav. & L. Soc., supra, Seale v. Ry. Co., supra; Chatanooga L. & P. Co. v. Hodges, supra; Stone v. R. R. Co., supra.)

4. So far, we have proceeded upon the theory, as heretofore stated, that no negligence is charged in not furnishing help and protection on the range, and if that is correct, the case was rightly decided. In fact, in view of the argument contained in the original brief for appellant heretofore referred to, and which was probably the argument used in the court below, it is not at all surprising that the lower court sustained the demurrer. Counsel for appellant, evidently realizing, and in order to parry, the force of the able argument of counsel for appellee on the question of proximate cause, materially modify their position in a reply brief, and contend that the defendants should have gone to the assistance of plaintiff during the storm, and we must accordingly turn our attention to that point. We find that it is stated in the amended petition, that according to the custom already mentioned, "in case of storm, it is the duty of such camp mover to go immediately to the sheep camp and render such assistance as may be necessary to the herder in charge of such sheep and to see that the herder is provided for and protected and that such sheep are cared for." And again: "plaintiff started after his flock, relying upon the defendants coming to his aid, as he had a right to expect, and as it was their duty to do." And again, that plaintiff went about the discharge of his duties, "confidently expecting that help would be coming to him in the storm and fuel be taken to the camp." And again, that the injury occurred among other reasons set forth on ac-

count of the neglect of defendants "to come to his assistance in the storm."

Construing the pleading liberally, we do not think that it can be said, that it is not sufficiently charged that the defendants neglected, as it was their duty to do, according to custom, to come to plaintiff's assistance in the storm, and such assistance is not by the pleadings limited to the camp alone. If such was the duty of the defendants and that duty was violated, then clearly the amended petition was not demurrable, and, upon principle and authority, the defendants must be held responsible for the injury that resulted therefrom as the proximate cause. The cases of Hyatt v. R. R. Co., 19 Mo. App. 287; Clifford v. Ry. Co., 9 Colo. 333, 12 Pac. 219, and Schumaker v. Ry. Co., 46 Minn. 39, 48 N. W. 559, 12 L. R. A. 257, are clearly applicable and decisive of the point. In order not to make this opinion too lengthy we shall refrain from quoting therefrom. If the duty of the defendants was as alleged, the plaintiff may have gone after the sheep, relying upon the fact that the defendants would at any moment come to bring him assistance and protection, and he may have been warranted, in view of the facts, in thinking that he would be safe in taking the risk. The defendants, knowing that duty, it cannot be said as a matter of law that it was not contemplated that plaintiff would go out onto the range in just such a case as happened, and, therefore, we cannot say that as a matter of law, the failure to furnish such protection could not have been the proximate cause of the injury. It may be argued, perhaps not without justice, that it would be unreasonable for plaintiff to have expected the protection on the range. Having wandered off, how was Murray to find him? But there is sufficient doubt on that subject, that the facts should, in the first place, be submitted to the jury, under the rules, and with the limitations governing cases in general. To enable plaintiff to recover on this theory, it is of course necessary that it appear among other things that if defendants had gone to plain-

tiff's aid, the injury would not have happened; in other words, that the failure to do so was the proximate cause thereof.

5.   We have come to like conclusions at which we have heretofore arrived, when we come to consider this case from the standpoint of assumption of risk.   There can be no doubt, that ordinarily speaking, a person herding sheep is often exposed to cold and storms; that is a part of his regular duties, and the risks thereof, generally speaking, are assumed as part of the employment.   The Supreme Court of Rhode Island in the case of King v. R. R. Co., supra, said:

"That one of the risks incident to long continued outdoor employment in the winter time, in this climate, is that one's feet or hands may be injured by freezing, is so clearly within the rule of assumed risks on the part of the servant as to require no argument.

Take the case of a teamster whose route, as is frequently the case, passes through a large tract of uninhabited country.   He starts out in cold and stormy weather, and during his journey his feet become frozen, or he is blockaded by a snow-storm; on account of which he suffers from hunger, fatigue, and cold, to the extent of causing him serious physical injury.   Could it be claimed for a moment that his employer could be called upon to compensate him for the damages thus sustained?   Clearly not.   The danger or risk involved in such a case would clearly be incidental to the employment, and by accepting the employment he assumes the risk."

In the case of Transp. Co. v. Smith, 78 Miss. 140, 28 So. 807, it was urged that because of the seaman's act, punishing any seaman for willful disobedience to orders, plaintiff did not assume the risk of his employment, just as it is urged in the case at bar that section 7113, providing that no one shall wilfully desert sheep, prevents the application of that principle.   But the Mississippi Court, ignoring the claim, says in part:

"The laborer must be presumed to have knowledge equal, if not superior, to his employer of the effect of cold upon his feelings and person. His own temperament is better known to him than any one else, and his own sensations sound the alarm to himself. Men are presumed to have ordinary common sense, until the contrary is shown, and the law does not speculate on degrees of knowledge about weather."

Of course, the defendants had no right to negligently enhance the peril of the employment, and plaintiffs did not assume the risk arising from such negligence, unless he knew and appreciated the danger, or the danger was so obvious that a reasonably prudent man would not have encountered it. Considering, therefore, this case, in the first place upon the theory that no protection or help was to be furnished to the plaintiff on the range, as we have heretofore done, what do we find to be the situation? We need not again set out the pleading on this subject. It clearly shows that plaintiff knew the danger, and, in the absence of the expectation of help and protection on the range, fully appreciated it, in which case he must be held to have assumed it. The general subject of assumption of risk was fully discussed in Boatman v. Miles, decided by this court recently, and few authorities need to be cited here. The fact, if it be a fact, that Murray was to bring fuel, or other things to the camp, which he left, and which according to the pleadings he could not again reach that day, and to which in fact he never returned, could, obviously, do the plaintiff no good after he had left it. If he expected no help on the range, if he could not return to the camp, what possible good could anything at the camp do him? In Hill v. Cotton Art. Co., (Mo. App.) 214 S. W. 419, it was said that all the cases agree that less indulgence is extended in judging the acts of plaintiff when he attempts to save property, than in a case where he attempts to save life. In Pegram v. Railroad, 139 N. C. 303, 51 S. E. 975, the court said:

"We are willing to hold with many able jurisdictions that where the employer's property is set on fire by the negligence of another, the employee may attempt to rescue it, but not in the presence of obvious danger. If the employee exposes himself rashly to obvious danger solely to rescue property, he cannot recover if he is injured in his attempt."

In the case of Maltbie v. Belden, 167 N. Y. 307, 60 N. E. 645; 54 S. R. A. 52, the deceased was killed by a burning tree suddenly falling upon him, while helping to fight fire. The court said:

"It may be said, in a general way, that it is the duty of the servant to protect his master's property from destruction by fire or any other cause, but when to do so subjects him to great and unusual danger, he alone must decide the risk to be assumed. This would be so whether the peril to be encountered is regarded as a detail of the work or in the nature of a new employment. The intestate must have realized that the new employment (if it was such) upon which he entered, involved risks not incident to the regular work in which he had been engaged for months. The scene was one of great confusion and excitement, with clouds of smoke, sparks and cinders driven towards the men employed in fighting the fire by a wind from the south.

The plaintiff's intestate passed the burning tree a number of times in the course of his employment, and the danger of the situation was as obvious to him as to any other person engaged in the work of saving property, and if it failed to impress him, he was either negligent or dominated by that excitement and preoccupation usual at such a time.

A servant assumes not only the risks incident to his employment, but all dangers which are obvious and apparent, and so, if he voluntarily enters into, or continues in the service, having knowledge, or the means of knowing, the dangers involved, he is deemed to assume the risks and to waive any claim for damages against the master in case of personal injury."

See also Taylor v. Telephone Co., 163 Mich. 458, 128 N. W. 728; Cook v. Johnston, 58 Mich. 437, 25 N. W. 388; Hill v. Cotton Oil Co., supra; Morris v. Ry. Co., 148 N. Y. 182, 42 N. E. 579; Eckhart v. R. R. Co., 43 N. Y. 502, 3 Am. Rep. 721; most of which deal more particularly with contributory negligence.

But, on the other hand, if the plaintiff was promised help and protection on the range during the storm, or other facts should appear that may have reasonably warranted the plaintiff in facing the danger, then we cannot say as a matter of law that plaintiff assumed the risk. The argument on that point need not be repeated here. We held in Boatman v. Miles, supra, that assurances of safety were facts to be considered in determining whether the plaintiff assumed the risk. (See also Hyatt v. Ry. Co., supra.) Where a custom exists, that a master must give protection in case of exposure to danger, we believe the effect is the same as where assurances and promises are given directly. In view of the allegations of the petition, therefore, this question, as well as the question of contributory negligence, to which the reasons herein given apply with equal force, should, in the first instance, be left to the jury, under the rule and with the limitation, generally applied in such cases.

The judgment entered herein in the court below is accordingly reversed, with directions to the lower court to overrule the demurrer to the amended petition herein filed, and for further proceedings in said cause not inconsistent with this opinion.

*Reversed.*

POTTER, C. J., and TIDBALL, District Judge, concur.